ELIZABETH PENSONNEAU et al., Appellants, *v.* WILLIAM BLEAKLEY et al., Appellees.

### APPEAL FROM ST. CLAIR.

If an attorney, in the due exercise of a power given to him by his principal, execute a deed in his own name, and not in that of the principal, it is competent for a court of equity to aid and complete the defective execution thus made by the agent.

If the sale thus made by the agent was fraudulent, no equitable title would pass to the purchaser or his assignees.

The law will not permit a person who acts as agent or trustee, to be both buyer and seller. Courts of equity will not sanction such a course, nor sanction shifts or evasions to avoid this rule.

If the agent purchased directly in his own name, or procured another to purchase for his use, either directly or indirectly, courts of equity will set aside the sale, even if a full and valuable consideration has been paid.

THE bill filed in this case alleges, that on the 13th of January, 1816, Josiah Bleakley constituted and appointed one John Hays his attorney in fact, empowering him to sell and convey certain lands situate in the county of St. Clair, which power of attorney was duly recorded, &c.; that, on the 20th of June, 1817, by deed, Hays, in his capacity of attorney, conveyed, for a valuable consideration, to William A. Beard, the south half of section three, township one, north of range nine, west; that, on the 9th of January, 1818, Beard, by deed, conveyed the said land to Hays; that Hays died, leaving three children, among whom the said land was divided; that this complainant has acquired the said land by descent and purchase, &c.; that the heirs of Bleakley have commenced a suit in ejectment, to dispossess the complainant, which has been tried, and resulted in a judgment in favor of Bleakley's heirs; that a motion for a new trial was pending in that suit; that the said deed of conveyance from Hays to Beard, and made by Hays in the capacity of attorney as aforesaid, is simply signed "John Hays," instead of being signed, "Josiah Bleakley, by John Hays, his

attorney," an error manifestly the result of ignorance in such matters of form on the part of said Hays; that this error caused the rejection of the deed as evidence when offered on the trial of said ejectment suit, whereby complainant (Pensonneau) was defeated in that trial. The bill then prayed to have the error in the signing of the deed corrected.

The answer to this bill admits that Josiah Bleakley owned the land in his lifetime; that he executed the power of attorney, &c.; that Hays, in consequence of the trust reposed in him, was bound to sell the land to the highest and best bidder, and that under no state of case could Hays become the purchaser; that Hays conniving, &c., sold the land to Beard, then a deputy sheriff under Hays, and an inmate of his family; that Beard was without means to make the purchase, &c., and that the whole transaction was unfair, and only designed to give color of fairness and honesty to the transaction; that the sale and purchase were for the benefit of Hays.

At the September term, 1850, of the St. Clair Circuit Court, UNDERWOOD, Judge, presiding, it was decreed that the deed from Hays to Beard, and the deed from Beard to Hays, be deemed and held for naught; and proceeded to direct how the land in controversy should be disposed of, &c.

From this decree Pensonneau and others appealed.

J. GILLESPIE, for appellants.

G. A. KOERNER, for appellees.

CATON, J. The primary object of this bill was to perfect the execution of the deed which was made by Beard. Hays was the attorney in fact of Bleakley; and the object of the deed was to convey the estate of Bleakley to Beard. This deed was executed by Hays in his own name, instead of that of his principal, as it should have been; for the purpose of conveying the legal title. If the sale to Beard was *bonâ fide*, it is competent, and there is no doubt that it is the duty of the court of equity to perfect the execution of the deed, so as to effectuate the original intention of the parties. Whether the execution of the deed should be perfected, depends entirely upon the character of that sale. As no legal title passed, the complainant must rely upon an equitable title derived from that sale. If the sale was fraudulent, no equitable title could be derived under it, and the lapse of time or subsequent purchase by innocent parties could not create an equitable title which this court could enforce, where none originally existed. The case is very different from what

it would have been had the legal title passed, and this bill were filed to set it aside on account of fraud in the original sale.

The fraud alleged is, that the sale was in fact made by Hays, the attorney, to himself, and that Beard was only a nominal party for the purpose of receiving the conveyance from Hays, and then of transferring the legal title to him. If that was the case, it is not denied that the transaction was fraudulent, and might be set aside at the instance of the principal, or his representatives. The law will not allow a party to be both buyer and seller of the estate of another, which has been confided to his discretion and disposal. Having regard to the infirmities of human nature, it will not allow him to occupy a position where his self-interest will come in conflict with his integrity. When he assumes to represent another, he renounces the right to act for himself. This rule is universal in both courts of law and equity, and is so well understood and so reasonable, that even its discussion would be out of place. No matter how open and public and apparently fair the sale may be,— no matter how adequate and abundant may be the consideration, — sound morality and the policy of the law forbid it altogether, and the courts cannot sanction it.

The evidence upon this subject is very brief, but certainly very much to the point. The deed from Hays to Beard bears date on the 20th day of June, 1817, and the acknowledgment is dated on the 15th of April, 1818, while the certificate of the secretary of the territory to the official character of the officer before whom the acknowledgment was made, is dated the 6th of April, 1818, nine days before the acknowledgment purports to have been taken. The deed from Beard to Hays bears date the 8th of January, 1818, and appears to have been acknowledged before the same officer on the 9th day of March, 1818, and the certificate of the secretary bears the same date with that attached to the other deed.

All that we know of the actual transaction, aside from the face of the deeds, we learn from the testimony of Governor Reynolds. He, and the magistrate before whom both deeds were acknowledged, were subscribing witnesses to both. The latter, it is probable, is dead; at least he is not produced as a witness. The former testifies that both deeds were executed at the same time, or were one transaction; that no money was paid by Beard for the land, according to his opinion or impression. His opinion was, that Beard bought the land for Hays, and that the conveyance was made to Beard for the purpose of getting the title into Hays; that Beard was able to have bought the land, and that the price paid was the full value of the estate

2*

at the time ; that Hays was a "strenuous, honest man;" and that Beard was a deputy sheriff under Hays.

We are of opinion that this testimony, taken in connection with the other circumstances of the case, shows that the sale was originally made for the benefit of Hays. If it be true, as we are satisfied from the testimony was the case, that both deeds were made at the same time, the discrepancy in their respective dates and acknowledgments, indicates most forcibly a sinister purpose, and it is not easy to reconcile it with openness and fairness in the transaction. No motive can be assigned for it, unless it was for the purpose of creating a false impression as to the truth of the transaction. When the deeds were actually executed we are not informed; nor does the witness state that both were acknowledged at the same time. Yet, from the fact that the magistrate who took the acknowledgments was a subscribing witness to both deeds, it is most probable that both were acknowledged at the same time, and that the magistrate signed the acknowledgments already written out without noticing the dates, or that he was a willing party to the misrepresentations contained in the dates of the acknowledgments. The certificates of the secretary of the territory of the official character of the magistrate are both dated the same day, and they show that the acknowledgment of the deed from Hays to Beard was taken before it bears date. This strongly corroborates the recollection of Governor Reynolds as to the false dates, and shows that the magistrate was either imposed upon or was a party to the false statements. Suspecting no fraud or design, he may not have deemed the dates at all important, as in ordinary cases they would not be. But Hays was an honest man. This may be ordinarily true, and yet he may have been guilty of a legal fraud in the purchase of this land. He knew he was paying the full value of the land, and that his principal was anxious to sell, as was manifest from his letters of instruction, and he may have been unable to find another purchaser who would pay as much ; his principal was at a great distance, and the means of communicating with him were seldom and precarious. Under such circumstances, he may not have felt that he was acting the part of a dishonest man to take the land himself and pay for it all that it was worth. Knowing, however, as he probably did, that the transaction was not strictly legal, but feeling confident of his moral integrity, he thought it necessary and proper, in order to avoid the probability of future difficulty, to adopt a form which would show upon the face of the transaction that it was strictly legal. Relying no doubt with confidence upon the great improbability

Pensonneau et al. *v.* Bleakley et al.

that the transaction would ever be closely scrutinized by Bleakley, he seems to have been satisfied with making all appear right upon the record, for he does not appear to have thought it necessary to go through with the formality of the payment of the purchase-money in the presence of the witnesses to the deeds; nor indeed does he appear to have taken any pains to conceal from them the actual truth of the matter. We are very clearly of opinion, that the sale was illegal, and should not be confirmed.

Besides the special prayer, that the deed might be perfected, the bill also contains the general prayer. Under this, the court decreed that the premises in question should be sold; and of the proceeds, the amount of the original purchase-money, with interest, should be paid to the complainants, and also all taxes paid by them on the premises, as well as the value of the improvements placed on the premises, deducting the rents and profits, and setting aside the deed made by Hays to Beard. Of course the complainants cannot object to the relief thus granted to them under the general prayer, but they do object to that portion of the decree which sets aside the deed from Hays to Beard, on the ground that it grants affirmative relief to the defendants. That is not the proper view in which to consider that portion of the decree. It was necessary to set aside that deed, not for the benefit of the defendants, but for the purpose of enabling the court to grant that relief to the complainants to which they appeared to be entitled. Although ineffectual in itself to affect the legal title, which the court ordered to be sold for the purpose of raising the money decreed to the complainants, yet it would exist as a cloud upon the title, and might prevent the full value of the estate from being realized upon the sale. It was for the benefit of all parties, therefore, that the fraudulent deed was finally disposed of.

We find no error in the decree of the circuit court, and it must be affirmed.

*Decree affirmed.*