Wallace v. Bartle.

WALLACE *et al.* v. BARTLE *et al.*

1. **Judicial sale: EQUITIES: NOTICE.** The purchaser at judicial sale of the equity of the execution defendant in real estate does not thereby acquire any superiority over prior equities in third parties of which he has no notice.

*Appeal from Linn District Court.*

THURSDAY, DECEMBER 6.

THIS controversy relates to the N. E. ¼, sec. 9, T. 86, R. 8. S. M. Brice was the owner of a land warrant issued to one Frazier, and on the 21st July, 1854, entered therewith, in the name of said Frazier, this tract of land.

March 9, 1857, Brice and wife, by warranty deed, conveyed this land, with other real estate, to his mother Margaret, the said sale being without consideration, and intended to defraud creditors. This deed was filed for record the day of its execution.

April 24, 1862, S. M. Brice and wife sold the same property to the defendant Bartle, for a full and valuable consideration then paid, and executed a bond conditioned to convey the same on or before the 1st day of July, 1862. At this time the legal title was in Frazier; and this bond further provided that if the deed could not be obtained without legal process, the obligors were to use due dili-

gence to obtain the same. This bond was not acknowledged, but was, nevertheless, filed for record January 30, 1864.

July 2, 1862, Brice brought his action against Frazier for the recovery of the legal title, and on the 1st of December, 1863, a decree was rendered, confirming the title in said S. M. Brice as against said Frazier.

February 26, 1864, Margaret Brice, the mother, conveyed the premises, by quitclaim, to Bartle, without any new consideration, but with the view of perfecting his title under the contract with the son; and this deed was filed for record March 3d of the same year. At the time Bartle purchased of S. M., he had no actual knowledge that the mother had any interest in the property, nor, of course, of any fraudulent intentions, on the part of the son, in making said conveyance to his mother. And this is Bartle's title.

Plaintiff's title is as follows: November 15, 1862, Preston obtained a judgment against S. M. Brice for the sum of $125, upon a note made April 16, 1855, and thereunder, on the 18th of January, 1864, the land in controversy was sold by the sheriff to Preston, the sheriff giving to the purchaser a certificate of said sale. On the 24th of January, 1865, the sheriff, in pursuance of said sale and certificate, made a deed to Preston, which was filed for record on the 30th of said month. Preston paid no other consideration for his purchase than to credit his judgment with the amount of his bid, amounting to $130.

February 7, 1865, Preston sold and conveyed, by warranty deed, the land to plaintiff, their deed being filed for record the same day. At the time Preston bought, he had no knowledge of Bartle's interest. Nor did Bartle, until about the time he obtained his quitclaim deed from Margaret, have any actual knowledge of Preston's judgment, or the sheriff's sale thereunder.

Upon these facts the referee to whom the case was submitted found in favor of defendant's title; the exceptions to the report were overruled in the District Court, plaintiffs' bill was dismissed, and they appeal.

*I. M. Preston & Son* for the appellants.

*R. D. Stephens and E. C. Ryan* for the appellees.

WRIGHT, J.—Two or three propositions must be regarded as well settled in connection with this controversy. Among them may be mentioned the following: While the legal title was in Frazier when S. M. Brice conveyed to his mother and afterward sold to Bartle, the beneficial interest was in said S. M., and the subsequent decree of December, 1863, confirming this interest, inured to the benefit of his grantee and vendee. That is to say, this decree, based, as it was, upon an equity existing in Brice at the time of his conveyance to his mother, and the contract with Bartle, and in a case brought by him to perfect the title which he had thus transferred and undertaken to transfer, though nominally investing him with the legal title as against Frazier, perfected the title of Mrs. Brice and made Brice himself but the trustee of Bartle, who had paid the entire and full consideration for the land. As between the mother, son and Bartle, therefore, it is indisputable that the son had no interest in this land, either equitable or legal, at the time it was levied upon under the Preston judgment. For it will be remembered that though Preston obtained his judgment in November, 1862, pending Brice's action against Frazier, he did not sell the land until in January, 1864, after the decree in that case.

Then, again, but for the deed to Mrs. Brice, made and filed for record in March, 1857, there would be but little doubt that, as Preston bought without knowledge of

*1. JUDICIAL SALE: equities: notice.*

Bartle's right, he would, as against Bartle, occupy the position of an innocent purchaser. For, though he was a purchaser at sheriff's sale, he bought, and in legal contemplation, paid his money before notice of Bartle's equity, and would therefore be entitled to priority.   *Vannice* v. *Bergen*, 16 Iowa, 555 · *Evans* v. *McGlasson*, 18 Id., 151; *Halloway* v. *Platner*, 20 Id., 121; *Butterfield* v. *Walsh*, 21 Id., 97, and the cases there cited.

But when he bought, the title was in Mrs. Brice. Now, leaving out of consideration the fact that Bartle put his bond on record, before Preston obtained his sheriff's deed, but after his purchase, the question is whether Preston or Bartle occupied the better position as to this land on the 18th of January, 1864, the date of Preston's purchase. At this time, we remark again, the title was in the mother, and any possible equity at any time held by the son, had been sold by him to Bartle for a full and valuable consideration, long before paid and received.   As to Bartle then, S. M. Brice had no title to the land nor right therein. Nor had he in favor of Preston, except upon the ground that the conveyance to the mother was fraudulent.   Preston then bought, not Brice's legal title, for he had none, but his equity, whatever it was.   In so purchasing, there being no fraud on the part of Bartle, did he get Brice's apparent or only his actual equity?   Of record there was no apparent equity.   For the record imported no more notice of an equity in Brice as against his mother in favor of creditors, than it did of Bartle's interest in the land. Then, did Preston acquire anything more than Brice's interest in the land, an interest not of record, not resting *in pais* even, but based upon the theory that the mother, as a fraudulent grantee, held the same in trust for the son's creditors?   In other words, if a judgment creditor shall buy in the land under execution, to which the debtor has no apparent or record title, but there is an equity

which the creditor may and does reach as against the holder of the legal title, does the purchaser take the title as against a third person who has bought this equity in good faith and thereby acquired all possible title of the debtor? For two reasons or upon two grounds, if no more, it seems to us the rights of the third person (in this case, Bartle) are superior and should prevail.

In the first place, Bartle had obtained and held, at the time of the commencement of this suit, the legal title, and this is entitled to superior strength, even conceding that in conscience the rights of the parties are equal. In the second place, Preston was the purchaser of an equity and not of the *legal* title, and as such he was affected in conscience by the prior equity, and as Bartle's equity was prior in point of time, it is therefore prior in point of right. Story's Eq. Juris., § 1502; Eq. Pl., 604; Sugden Vendors (7th ed.), ch. 16, 713; ch. 18, 757; *Grosvener* v. *Allen*, 9 Paige, 74; *Anderson* v. *Roberts*, 18 Johns. 513; *S. C.*, 3 Johns. Ch., 377; *Fitzsimmons* v. *Ogden*, 7 Cranch, 2; *Vattier* v. *Hinde*, 7 Pet., 271.

We are aware that under our statute a judgment becomes a lien upon the real estate of a defendant, and that this term includes " all interests therein, equitable as well as legal." And it is equally true that the equity title of a defendant in real estate may be levied upon and sold as well as the legal title. But if one buys an equity, he buys no more, and cannot claim all the rights of one buying in the legal title. It is not as though he buys land, the legal title being in the debtor, with notice of a lien in favor of A, and it should be claimed that thereby he had notice of a secret lien in favor of B. In such case it is clear that the purchaser would not be affected with notice of B's equity. *Koons* v. *Groves*, 20 Iowa, 373. But if the creditor purchases under execution the equitable title of his debtor, we think he buys at his

DECEMBER TERM, 1866. 351

peril, taking whatever that is and no more. If it is supe-
rior to the equities or title of others, whether the adverse
title or equities be derived from the debtor or otherwise,
then he takes the fruits of his purchase or investment.
If inferior, or if equal only in conscience, and the legal
title is in the other, he cannot successfully disturb it.
This is certainly the rule aside from statute, and we are
not aware of any thing in our legislation changing it.
See 2 Lead. Cas. in Eq., 72, 162; *Daniel* v. *Hollings-
head*, 16 Geo., 196; *Carroll* v. *Johnston*, 2 Jones' Eq.,
120; *Pensonneau* v. *Bleakley*, 14 Ill., 15; *Sergeant* v.
*Ingersoll*, 7 Barr, 340; 3 Harris, 340. The rule is that
the purchaser of an equity obtains no superiority over
prior rights, though strictly he may not thereby be
affected with *notice* of the existence of such rights. See
further, *Shirras* v. *Caig*, Cranch, 48; *Miller* v. *Colville*,
21 Iowa.

Affirmed.