# Curry, Trustee, and James P. McClosky v. W. S. Hinton.

## Curry, Trustee, and James P. McClosky v. J. W. Hinton.

(Decided May 27, 1921.)

### Appeals from Allen Circuit Court.

1.  Appeal and Error—Finding of Chancellor.—Evidence examined, and the judgment of the chancellor below, finding that certain oil and gas leases had expired at the expiration of three years, and that the same had been altered after their execution and delivery, is approved.

2.  Alteration of Instruments—Forgery.—A fraudulent, material alteration of a deed is in law a forgery, and the same is void and ineffectual for any purpose. And purchasers from the vendee in such instrument obtain no better title than their vendor had, and are not entitled to the protection afforded innocent purchasers.

3.  Alteration of Instruments—Materiality.—The alteration of an oil and gas lease so as to make it appear to be in force for five years instead of three, is a material alteration.

4.  Estoppel—Oil and Gas—Lease.—Lessors in an oil and gas lease which by its terms ran only for three years, are not estopped to claim that it expired in a shorter period than five years because they accepted the rentals for the third year after information that the leases as recorded showed they had been altered.

J. FRANKLIN CORN and T. W. and R. C. P THOMAS for appellants.

OLIVER & DIXON for appellees.

OPINION OF THE COURT BY TURNER, COMMISSIONER—Affirming on each appeal.

On February 21, 1916, the appellees, W. S. and J. W. Hinton, father and son, each executed and delivered to Huntsman & Dixon three separate oil and gas leases covering three distinct tracts of land in Allen county, the lease of W. S. Hinton covering a tract of 25 acres, more or less, and the two leases of J. W. Hinton covering two separate tracts containing respectively 30 and 74 acres.

The three leases were indentical in their terms except as to the names of the parties; and the W. S. Hinton lease was lodged for record in the Allen county court on the 29th of October, 1917, and the certificate of recordation is dated the 17th day of November, 1917. The two leases executed by J. W. Hinton were likewise lodged·

for record on the 29th day of October, 1917, but the certificate of recordation as to each of them is dated the 15th day of November, 1917.

Each of the leases on its face was given for the sole and only purpose of mining and operating for minerals, oil and gas, and they each as recorded were to remain in force for a term of five years from date and as long thereafter as oil, gas or minerals might be produced therefrom. The lessees agreed in each of them to begin a well on the premises within one year from the date thereof, or pay rentals at the rate of 25 cents per acre for each additional year such beginning was delayed until a well was begun.

The lessees on the 28th day of November, 1917, transferred and assigned each of these leases to C. M. Curry, trustee, and Curry, trustee, transferred and assigned, on the 24th of January 1919, a one-sixth interest in each of them to James P. McClosky.

No well was begun on any of the leases during the first year, nor had one been begun when these suits were brought, but the Hintons accepted the rentals for the years beginning in February, 1917, and February, 1918.

At about the time the second rentals were due in February, 1918, for the third year of the lease, the Hintons learned that the leases as recorded showed that they were for a term of five years, and notwithstanding they then and have ever since claimed that the original leases were executed for only a term of three years, they accepted the rentals for the third year.

In 1919, after the expiration of the three years from the date of the leases, each of the Hintons filed an equitable action alleging, in substance, that at the time of the execution and delivery of each of the three leases to Huntsman & Dixon, or their agent, each of said leases provided on its face that it should be in force for a term of only three years from its date, and that notwithstanding this provision the leases as recorded in the county clerk's office each showed on its face that it was to be in force for a term of five years, and they alleged that either by fraud, mistake or oversight the "five" was inserted in the original leases in lieu of the "three," and they prayed for a judgment declaring each of the leases void and of no further binding force, and that each of the same be cancelled and held for naught.

The defendants answered denying the material allegations of the petitions, and alleging affirmatively that the leases as originally executed were for a term of five years, and in addition there was a plea of innocent purchasership by Curry, trustee, and McClosky.

The circuit court held, that the leases as originally executed were for a term of only three years and cancelled each of them, or rather, in effect, held that they had expired, and from that judgment Curry, trustee, and McClosky have appealed.

The question of fact involved is not in doubt; only three depositions were taken and all for the plaintiffs. Both of the plaintiffs stated, in substance, that the leases were to expire at the end of three years, and that the figure "three" distinctly appeared in each of the leases as prepared by the agent of the lessees. Not only so, but Smith, the agent of Huntsman & Dixon, who was a deputy county court clerk, and who took the leases for the lessees, testified clearly and explicitly that he first undertook to get these leases for a term of five years, and that he had been authorized by Huntsman & Dixon to take only five year leases, and finding that he was unable to get them for that period, he went to a telephone in the neighborhood and called up Huntsman and notified him that he could not get these and certain other leases except for a term of three years, and that Huntsman directed him then to go on and take them for three years, and that in accordance with such directions he did take the leases, and that they were taken for a term of three years.

The evidence of all three of the witnesses introduced further showed that the leases at the time of their execution were turned over to Smith as the agent of Huntsman & Dixon, and that they then showed they were for a term of three years only.

This evidence, taken for the plaintiffs, is not controverted by any one, and the deposition of neither Huntsman nor Dixon appears in this case.

The conclusion is therefore irresistible that the court's finding of fact, that the leases as originally executed were for a term of only three years, must be approved.

The question of innocent purchase is likewise of little difficulty owing to a recent decision of this court in a similar case.

In the case of Lowther Oil & Gas Co. v. McGuire, 189 Ky. 681, a tract of land had been conveyed by Marcum and wife to John W. Flynn in July, 1910, but the deed had not been put to record. While the title was thus in John W. Flynn it was levied on and sold by the sheriff under an execution against John W. Flynn. McGuire became the purchaser at the execution sale and a deed was made to him by the sheriff, but after McGuire's purchase at the sale the name of John W. Flynn was erased from the original Marcum deed and the name of Charles W. Flynn was inserted therein, and the deed was then recorded showing Charles W. Flynn to be the vendee.

While it was so on the record in the name of Charles W. Flynn, and without notice of the fraud, Lowther and others took an oil and gas lease from Charles W. Flynn, and in an action between McGuire and the lessees of Charles W. Flynn it was expressly held that they were not entitled to the benefits of *bona fide* or innocent purchasers, the court saying:

"A fraudulent material alteration of a deed is in law a forgery. 19 Cyc. 1374; Devlin on Real Estate, vol. 1, section 461a; Bardin v. Grace, 167 Ala. 453; 1912A Ann. Cas. 537. It is likewise true that a forged deed is absolutely void and is ineffectual for any purpose. Authorities, *supra,* and Devlin on Real Estate, vol. 2, section 726; 18 Corpus Juris, pages 224 and 242. In such cases purchasers from the vendee in the void instrument obtain no better title than that possessed by their vendor and are not entitled to the protection afforded to *bona fide* and innocent purchasers. Authorities, *supra,* and 13 Cyc. 591. In the last citation upon this point the text says: 'But where the deed is regarded as absolutely void, it is held that even such a purchaser (innocent or *bona fide*) can obtain no title. And no title can be obtained even by an innocent party under a deed which is forged.' The text on page 242 of the volume of Corpus Juris referred to says: 'But where the deed is regarded as absolutely void, it is held that even such a purchaser can obtain no title.' Section 726 of Devlin on Real Estate referred to says, *inter alia*: 'The provision of the statutes that deeds affecting the title of land shall be void as against subsequent purchasers and creditors without notice, if not recorded has no application to deeds which are forged.' Other authorities announcing the same doctrine are: Pry v. Pry, 109 Ill. 466; Cole v. Long, 44 Ga. 579; De Wolf v. Hayden, 24 Ill. 525, and Crawford v. Hoeft, 58 Mich. 1.

It is therefore clear that this defense is not available under the facts of this case.''

In the case quoted from there was an alteration of a name and the insertion of another name in lieu thereof, the alteration being apparently made for the purpose of making it appear that John W. Flynn, the defendant in the execution, and whose title McGuire had bought at the sale, never had any title; while in this case the alteration was a change in a figure showing that a lease was for longer period than it was executed for.

In each instance there was a material alteration. In the one case, for the purpose of defeating one's title under an execution sale; and in the other for the purpose of making it appear that a lease was in force for two years longer than it actually was, possibly with the purpose in view of making it more valuable to prospective purchasers or persons contemplating development.

The claim that appellees are estopped to assert that the leases were for only a term of three years because they accepted in February, 1918, the rentals for the third year, cannot be sustained. At that time it is admitted that the lease was in force, and that it would remain in force for another year, and although the plaintiffs then had notice that a fraud had been perpetrated or a mistake made, and that the leases as recorded showed that they were for a term of five years instead of three years, they, in recognition of the fact that the leases still had another year to run, in no wise precluded themselves from asserting the fraud by accepting the rentals for that year. It is likewise undenied that they each wrote to the then holders of the leases about that time giving notice that they had only one year more to run.

The judgments of the lower court are in accord not only with the merits but with the law, and they are each affirmed.