The Island Coal Company v. Streitlemier *et al.*

No. 16,580.

## THE ISLAND COAL COMPANY v. STREITLEMIER ET AL.

REAL ESTATE.—*Cross-Complaint to Quiet Title.*—*New Trial as of Right.* Where, in an action to reform an agreement to convey land, and for specific performance thereof, the defendant files a cross-complaint to quiet title, the latter may claim a new trial as of right under section 1064, R. S. 1881.

SAME.—*Quieting Title.*—*Sufficiency of Complaint.*—A cross-complaint by a defendant alleging ownership of land and that the plaintiff was falsely and without right asserting that he held the defendant's written contract to convey the land and was prosecuting his action to enforce specific performance of the contract, thereby casting a cloud upon the defendant's title, shows a claim of an adverse interest in the land, and is good.

SAME.—*Incompleted Contract to Convey.*—*Delivery.*—Where a contract to sell "a strip off the north end of our farm" is signed by the parties, with an understanding that it is not to be obligatory until the owner shall have an opportunity to see where the marginal boundary lines will run, and such owner refuses to deliver the writing until the boundary lines are pointed out, and then, the boundaries not being satisfactory, absolutely refuses to deliver, there is no agreement, but only a preliminary negotiation.

SAME.—*Contract to Convey.*—*Indefinite Description.*—*Specific Performance.*—It seems that an agreement to "sell a strip off the north end of our farm in Stafford township, Greene county, Indiana, in shape as by diagram below, the boundaries extending north and south, being agreed upon as by diagram, and the boundaries east and west are yet to be determined upon later, but enough is to be sold to the Island Coal Company, at $40 per acre, to (extending far enough east) cover their plant switches, pond and barn, and such as is necessary for coke ovens," the accompanying diagram being indefinite, is not sufficiently certain to be specifically enforced.

From the Owen Circuit Court.

*S. N. Chambers, S. O. Pickens* and *C. W. Moores,* for appellant.

*W. W. Moffett* and *C. E. Davis,* for appellees.

HOWARD, C. J.—This was an action by the appellant against the appellees, to reform an agreement to convey

land, and for specific performance thereof. The appellees answered by a general denial and a plea of *non est factum*, and also filed a cross-complaint, alleging that the appellee Jane was the owner of the parcel of land described in the complaint, except a small triangular piece thereof; that the appellant was asserting that it held a written contract and agreement, executed by the cross-complainants, by which they agreed to convey to the appellant company the tract of land in question, and the company was prosecuting an action to enforce specific performance of the alleged agreement, when in truth, and in fact, appellees never did consent to, authorize, execute, or make any such agreement, or any agreement, to convey said parcel of land to said company; that the claim of the company to said land was wholly groundless, and without right, and was casting a cloud on the title of said Jane to said land; and prayed that as against said alleged contract to convey, and all other claims of said company to said lands, except said triangular piece, the title of the appellee Jane be quieted.

To this cross-complaint, and to the affirmative answer there was a general denial. The issues were tried by the court, and a special finding of facts was made with conclusions of law thereon, upon which judgment was rendered for appellant.

A new trial as of right was granted, and the venue was changed from the regular judge to the special judge below.

On the second trial, on motion of appellant, the cross-complaint was stricken out, which ruling is assigned as cross-error by appellees. The court, however, refused to set aside the rulings and orders of the regular judge granting a new trial as of right, which refusal is assigned as error by appellant.

Special findings of fact were made, with conclusions

of law, in favor of the appellees upon which judgment was entered.

Whether the court erred in granting a new trial as of right must depend upon the character of the pleading called the cross-complaint. This was a pleading filed by the appellees to quiet their title to the land in question. It is well settled that under provisions of section 1076, R. S. 1894 (section 1064, R. S. 1881), a new trial may be demanded as a matter of right in suits for quieting title to, as well as in those for the recovery of the possession of, real estate. *Truitt* v. *Truitt*, 37 Ind. 514, and cases cited. *Bisel* v. *Tucker*, 121 Ind. 249.

The same general rules govern a cross-complaint that govern a complaint. *Rausch* v. *Trustees, etc.*, 107 Ind. 1; *Johnson* v. *Pontious*, 118 Ind. 270.

The cross-complaint in this case alleged that the appellees were the owners of the land, and that the claim of the company thereto was groundless and without right, and was casting a cloud on appellees' title. This would seem to be sufficient. *Johnson* v. *Taylor*, 106 Ind. 89.

But counsel for appellant contend that the cross-complaint does not present the issue of title, "for the reason that the facts set up therein do not show that a cloud was being cast upon the defendant's title to the parcel of land in question by the plaintiff, nor that the plaintiff was making any claim to the title to the land as against the defendant's title thereto. That is, that the contract sued on in the complaint which the suit was commenced to specifically enforce, and the pendency of the suit for that purpose did not constitute a cloud upon the title or a claim of title as against the defendant's title."

It is true that appellant did not claim title to the property, but appellant did claim a right to the title by virtue of its contract of purchase. This, it seems to us, was a claim to an interest in the land, and if this inter-

est was real it would certainly be a cloud upon appellee's title. If, on the other hand, appellant's claim or interest in the land, whatever it might be, were unfounded and unreal, it would seem that appellees had a right to ask that such fact be established, and that their title be freed from the imputation cast upon it by the unwarranted claim made. Even "a void act may create such a cloud upon an owner's title as to entitle him to relief." *Walter* v. *Hartwig*, 106 Ind. 123.

Yet more, if this contract were in fact void, and still the appellant had brought suit to enforce it, and thus compel appellees to part with their title, it would seem that appellees might well ask to be relieved of further danger from the threatened claim.

Section 1082, R. S. 1894 (section 1070, R. S. 1881), authorizes an action to quiet title to be brought by any one having an interest in land "against another who claims title to or interest in real property adverse to him, * * * for the purpose of determining and quieting the question of title." Certainly the claim of appellant, under the alleged contract of purchase, is a claim of some interest in the land in question. Otherwise appellant would never have brought suit to enforce the contract.

We think the cross-complaint to quiet title was a proper pleading, and that it was error to strike it out. This ruling was, however, rendered harmless by the subsequent ruling of the court. Under their cross-complaint to quiet title appellees were entitled to a new trial as of right, and the court did not err in granting it.

The material facts bearing upon the contract of sale, upon which the suit was brought, were found by the court as follows:

That on the 27th day of January, 1887, the appellee, Jane Streitlemier, was the owner of one hundred and twenty acres of land in Stockton township, Greene coun-

The Island Coal Company *v.* Streitlemier *et al.*

ty, Indiana, which, on that day, she and her husband and coappellee leased to appellant, who entered into possession and made improvements thereon; that on October 5th, 1887, the following agreement and diagram were read and explained to and signed by appellees, bearing date of October 1st, 1887:

"LINTON, INDIANA, October 1, 1887.

"It is hereby agreed that we will sell a strip off the north end of our farm in Stafford township, Greene county, Indiana, in shape as by diagram below, the boundaries extending north and south being agreed upon as by diagram, and the boundaries east and west are yet to be determined upon later, but enough is to be sold to the Island Coal Company, at $40 per acre, to (extending far enough east) cover their plant switches, pond, and barn, and such as is necessary for coke ovens.

"ERNEST STREITLEMIER.
"JANE STREITLEMIER.
"ISLAND COAL COMPANY."

I. & I. S. R. R.

The figures 125, 300, 425, on the margin of said diagram were respectively intended as so many feet in

length.    The land was in Stockton township, but was, by mutual mistake of the parties, described as in Stafford township.

The finding continues:    "That said agreement to sell was signed by defendants (appellees) with the understanding, at the time, that the same should not be obligatory upon said Jane and Ernest until said Jane, in whom the title to said land then was, should have an opportunity to see where such marginal boundary lines would run.    Thereupon Col. Yeoman (acting for appellant) picked up said instrument, whereupon a controversy arose as to who should hold said instrument until the matter of said boundary should be assented to by said defendant Jane.    It was finally agreed that Sophia Streitlemier, daughter of defendants, should hold the same.    Whereupon Col. Yeoman passed it over to her; that the said boundaries could not, at that time, be definitely fixed and determined because the line of the switches connecting with the railroad had not been laid out and fixed, and said Jane did not know how far said track would run into her land, all of which was known to both parties at the time."

The tenth finding shows that on the day the agreement to sell was signed, and prior to its signing, the representatives of the coal company were at appellees' house and upon the land in dispute, and that, in the presence of appellees, measurements of the land proposed to be purchased were made, some stakes set, and the lines marked on the paper, with the figures 125, 300, 425.

The eleventh finding reads:    "Said agreement to sell remained in the possession of said Sophia and defendants, and thereafter Col. Yeoman called on defendant Jane and showed her where said boundary lines would run, whereupon she refused to sell said land.    Thereafter, and while defendant Jane had said instrument in

her possession she cut her own and her husband's signature therefrom and refused to give it unto the possession of the plaintiff on demand, but permitted a copy thereof to be made therefrom, minus the signatures.''

It was further found that when the switch lines had been ascertained, which was with the acquiescence of the appellees, and the amount of land necessary for pond, barn and coke ovens had been ascertained, appellant caused the lines to be run substantially as in said diagram laid out, the amount of land enclosed being about thirteen acres, as described in the complaint; that a deed was prepared describing this land, and the purchase price at forty dollars per acre tendered to appellees, but the tender was refused, as also the demand to execute the deed.

The conclusions of law upon the findings were:

"The plaintiff, the Island Coal Company, is not entitled to a reformation of said contract sued on, as prayed for in her complaint, nor is she entitled to a specific performance of said contract, nor is she entitled to a deed conveying to her the said $13\frac{5}{100}$ acre tract of land; that said contract of sale was never finally executed.''

We think these conclusions were fully justified by the findings. In the first place, it is very doubtful whether the instrument sued on, aided by the diagram and by all reasonable inferences that may be deduced from the writing, is sufficient to entitle appellant to a specific performance of the contract. The agreement is to sell a strip off the north end of the farm, the north and south boundaries being agreed upon, as shown in the diagram. The east and west boundaries, however, were left undetermined, as also the quantity of land to be sold; only that it should extend ''far enough east to cover their plant, switches, pond and barn, and such as is necessary

for coke ovens,"—that is to say, as much land as the company should find necessary.

In *Colerick* v. *Hooper*, 3 Ind. 316, it was said by this court, that "Where a written instrument contains all the facts of a contract, except such as may legitimately be proved by parol evidence, where there is a written agreement, that instrument is sufficiently certain to be enforced."

In that case the written instrument recited: "I have this day sold my lot to Alexis Coquillard on the plat in the town of South Bend."

It assumed that the seller had one lot, as shown on the plat, and implied that he had but one; and the only question to be determined was, which lot upon the plat belonged to the seller. This could be shown by the records, or otherwise, from data given in the complaint.

In the contract before us, "the boundaries east and west are yet to be determined upon," and it would seem that the only means for making this determination was the needs of the coal company, and these needs must depend upon the extent of its proposed business and the capital which it might wish to invest. If this contract could be enforced, could not one be enforced which should read thus: "It is agreed that we will sell to the Island Coal Company so much on the north side of our farm in Stockton township, Greene county, Indiana, as the company may need for their business, at forty dollars per acre"?

In a valuable note to *Atwood* v. *Cobb*, 26 Am. Dec. (Mass.) 657, citing many authorities, it is said, that "Where a contract contains no certain description of the property which is the subject of it, so that it can be identified, and furnishes no means of attaining such certainty by reference to any other matter, the contract can not be

The Island Coal Company *v.* Streitlemier *et al.*

specifically enforced." See, also, *Baldwin* v. *Kerlin,* 46 Ind. 426.

If a surveyor should attempt to locate the land according to the contract and diagram, he would find no fixed point from which to begin. He would know that the land should be 125 feet wide at the west end and 425 at the east end; but where the 300-foot offset should be located, he could not possibly determine. Neither could he determine whether the land should be near the west or near the east side of the farm, or whether it should be taken out midway between the east and the west, or at any intermediate location. It is evident that the contract, so called, was but preliminary to a final agreement which might or might not be made between the parties. But the conclusion of the court "That said contract of sale was never finally executed," is plainly correct; even if such contract were sufficient in itself, or could be made so by extrinsic aid.

The court found expressly that at the time the contract was signed, it was done with the understanding that the contract should not be obligatory until the appellees "should have an opportunity to see where such marginal boundary lines would run." The appellees accordingly refused to deliver the instrument of writing to the appellant "until the matter of said boundary should be assented to by said defendant Jane," the owner of the land.

And it is further found that when appellant's agent finally called "and showed her where said boundary lines would run * * * she refused to sell said land"; that thereafter, and while she "had said instrument in her possession, she cut her own and her husband's name therefrom, and refused to give it unto the possession of the plaintiff on demand."

It is very clear that there never was any meeting of

Sharpe *v.* The Commercial Travelers' Mutual Accident Association.

minds on this contract, that there was in fact no agreement, but only a preliminary negotiation.

The improvements made upon the land by appellant were under the provisions of its two ninety-nine year leases; under which, also, all lines were run enclosing such improvements. Appellant acquired no rights under the contract of sale; and appellees were free to complete that contract or to reject it. We think the court was fully authorized in the conclusion that the contract was never completed.

The judgment is affirmed.

Filed May 8, 1894; petition for a rehearing overruled Oct. 12, 1894.