Edens *v.* Miller *et al.*

## EDENS *v.* MILLER ET AL.

[No. 17,980. Filed March 10, 1897.]

DEED.—*Description.—When Void for Uncertainty.*—A deed, devise, or reservation of real estate, the description of which is impossible of ascertainment, is void.

SAME.—*Description.*—It is not the office of a description in a deed to identify the land, but to furnish the means of identification.

DEVISE.—*Reservation.—Boundary Lines.—Uncertainty of Description.*—Where the owner of two adjoining eighty-acre tracts of land located a family burial ground on the west line of the east tract, 39 feet east and west, and 78 feet north and south, enclosing same with a fence, and at his death devised to his daughter the east tract, reserving from the devise one acre of land as a family burial ground "to be taken in a square from out of the west side so as to comprise the present burial ground;" the reservation is void except as to the present burial ground, as it is impossible to determine a starting point for the boundary lines.

SAME. — *Reservation. — Construction. — Effect.* — Where a codicil reserves from a devise an acre of land to be taken in a square so as to comprise an original burial ground, the boundaries of which have been established, the impossibility of identifying the land intended to be added to the original burial ground will not defeat the reservation as to the original burial ground.

From the Warren Circuit Court. *Affirmed in part and reversed in part.*

*Edwin F. McCabe*, for appellant.

*W. B. Durborow* and *C. V. McAdams*, for appellee.

HACKNEY, J.—This was an action to quiet the title to certain real estate, and the questions for our decision arise upon exceptions to conclusions of law stated by the circuit court upon special findings of fact. From said findings it appeared that, in the year 1848, Jesse Tomlinson owned one hundred and sixty acres of land, the east half of which was the west half of the northwest quarter of section 29, etc. On the west line of said east half he had located a family burying ground, thirty-nine feet and a fraction east and west by seventy-eight feet and a fraction north and south, and about this ground he had constructed a fence. By his last will he devised said east eighty to his daughter, Nancy, and after the execution of said will he executed a codicil thereto, providing as follows: "I hereby reserve and take out of the devise  *  *  * one acre of land, to be kept as a family burial ground, and to be taken in a square from out of the west side" of said eighty, "so as to comprise the present burying ground near the orchard." Nancy died the owner of said eighty by virtue of said will and codicil, and in 1876 a commissioner in partition conveyed said land to one Sheridan, excepting "the right of way of the Toledo, Wabash & Western R. R. Co., and an acre of ground heretofore dedicated as a cemetery." During Sheridan's ownership and in 1879, with his consent, heirs of Jesse Tomlinson enlarged the burial ground as at first enclosed, by adding to the east side thereof a strip seven feet wide, and by adding to the north end thereof forty feet north and south by forty-six feet and a fraction east and west. Sheridan conveyed to Byrd, subject to the reservation in the deed

to him, and Edens, in 1892, received a conveyance from and through the heirs of Byrd for said west half, etc., "containing seventy-five acres, more or less." In 1895, and during Edens' ownership, said heirs, over the objection of Edens, again enlarged said burial ground, and placed around it as enlarged a substantial iron fence. This enlargement was with a view to taking in the acre reserved from said tract by said codicil, and and the theory upon which it was outlined was to treat the section line west of the original cemetery as the west line, its length being two hundred and seven feet, and a point in the center of said line being the center of the west line of said original cemetery; at the north end of said line running east, was another line of like length; on the south, running east, was another line two hundred and seven feet long, and said last two lines were connected, from the easterly ends thereof, by a line running north and south two hundred and six feet and six inches.

It is found that the several deeds mentioned were recorded within the proper time; that burials were made in said original cemetery before and after the death of said Tomlinson; that the northeast corner of the orchard mentioned in said codicil was, and still is, the southwest corner of said original cemetery, but is located in section 30; that all of the owners of said tract in section 29 have, while cultivating the lands not inclosed by said original cemetery fences, acknowledged the rights of the Tomlinson heirs to an acre of land in said tract for cemetery purposes, but said acre was never defined further than in the said manner of making said two additions.

There are several findings upon the subject of an easement in a way to the cemetery, but no question is presented upon the conclusion of the trial court from such findings, and we omit them. The conclu-

sions of law in question were to the effect that the final addition correctly defined the acre reserved to the appellees by said codicil; that they were entitled to the same for burial purposes, and that the appellant was the owner of the whole tract subject to said rights of the appellees.

The appellant's contention is, that the reservation in the codicil is void for uncertainty, and that the court erred in concluding that the description of the one acre, included within the boundaries created by the last addition, was correct.

One proposition of the appellant's counsel is not questioned on behalf of the appellee, namely: that a deed, devise or reservation of real estate, the description of which is impossible of ascertainment, is void. Such are the authorities. *Island Coal Co.* v. *Streitlemier*, 139 Ind. 83; *Wilson* v. *Johnson*, 145 Ind. 40; *Shoemaker* v. *McMonigle*, 86 Ind. 421; *Baldwin* v. *Kerlin*, 46 Ind. 426; *Buchanan* v. *Whitham*, 36 Ind. 257; *Lowe* v. *Turpie*, *post*, 652; Tiedeman's Real Prop., section 827; Hopkin's Real Prop., p. 473; Jones' Real Prop., 344; *Atwood* v. *Cobb*, 16 Pickering, 227, 26 Am. Dec. 657 (note).

Nor can there be any doubt of the proposition relied upon by counsel for the appellees, that it is not the office of a description to identify the land, but it is to furnish the means of identification. *Collins* v. *Dresslar*, 133 Ind. 290; *Works* v. *State, ex rel.*, 120 Ind. 119; *Rucker* v. *Steelman*, 73 Ind. 396; *Frick* v. *Godare*, 144 Ind. 170.

Upon these propositions the decision of the trial court must stand or fall.   What means of identification are furnished by the description under consideration?   It is said that the west boundary line can be definitely known by the direction that the one acre

shall comprise the original burial lot which was, and is, an object capable of definite location.

The section line dividing the two eighties owned by the testator was and is the west line of the original lot. This may be known by the evidence of fences and its location then and now at the northeast corner of an orchard, an object capable of location. This west line of the lot was required to comprise a part of the west line of the acre, since the whole acre was reserved from the east eighty and was required to include the original lot.

The difficulty as to the part of the section line which shall constitute the west line of the acre, has now been reached. Shall the north end of it begin at the north line of the old lot? If so, the south end will be one hundred and twenty-eight feet south of the old lot, accepting the two hundred and seven feet as the length of the west line. If the south end of the west line begins at the south end of the old lot, the north end will be one hundred and twenty-eight feet north of the old lot. So, it will be seen, we have ascertained the western limits of the acre, but when we attempt to locate the termini of this line we find that they may slide up and down the section line subject to one hundred and twenty-eight variations of one foot each. Without some direction from the description in the codicil or some arbitrary rule, the termini of the west line must remain in helpless uncertainty. Without the location of the west line, the only line of which we have any evidence in the codicil, we are without the slightest guide to the ascertainment of the remaining three lines. It is the decided rule, that if the starting point of a boundary line cannot be identified, no sufficient description may be had. *LeFranc* v. *Richmond*, 5 Sawyer 601; *Archibald* v. *Davis*, 5 Jones (N.

C.), 322; *Pry* v. *Pry*, 109 Ill. 466; *Deaver* v. *Jones*, 114 N. C. 649, 19 S. E. 637.

It is said, however, that the rule which makes the center of an artificial pond, a tree, a wall, a fence, a highway or a stream the boundary line, where such an object is referred to as the boundary, should obtain here.

There can be no doubt of the rule, referred to in Tiedeman on Real Prop., section 833 *et seq.*, but its literal application here would extend the west line of the one acre tract through the center, north and south, of the old lot and exclude one-half thereof, or defeat the requirement that the one acre should be in the form of a square. If the rule should be applied it would give no aid to a determination of the termini of the west line, and that is the all important inquiry at this time.

It is argued, further, that the center of the west line of the old lot, by applying the rule suggested, would become the center between the two ends of the west line of the acre because of the impossibility of making the center of the old lot the line of the west boundary without extending the acre into the west eighty, or excluding that part of the old lot west of its center. This peculiar application of the rule seems not to be supported by authority, for it requires the employment of the rule only to arbitrarly depart from it. The rule at best but supplies the location of a boundary, which is referred to by naming a fixed natural object, and does not define the termini of the boundary line. The mention of the orchard in the codicil was to identify and locate the old lot, a location about which we have no question. The quantity, one acre, is not a matter of dispute or doubt, and would give us no trouble if we could learn where its description should begin, and the same may be said

·of the requirement that the acre should form a square. Observing the authorities first cited we find no escape from the conclusion that the description cannot be ascertained from the codicil, and that a surveyor could not locate the acre from any evidence given by the codicil.

This conclusion, however, does not defeat the claim of the appellees to the original lot, nor to the first addition thereto. The reservation was to comprise the old lot, and its location, as we have said, is not in doubt. The first addition was made with the consent of the parties owning the eighty and those claiming the acre. That act, as far as it located and defined additional boundaries, was a construction of the reservation, and bound the parties to it to that extent. *Mettart* v. *Allen*, 139 Ind. 644; *Wolfe* v. *Dyer*, 95 Mo. 545, 8 S.W. 551; *Richards* v. *Snider*, 11 Or. 197, 3 Pac. 177; *McNamara* v. *Seaton*, 82 Ill. 498; *Mulford* v. *LeFranc*, 26 Cal. 88; *Smith* v. *Bradley* (Ky.), 11 S. W. 370.

The judgment of the lower court is affirmed as to said original lot and the first addition thereto, and is reversed so far as it included lands without the boundaries of said original lot and first addition. As to the easement, in the way included in said judgment, we make no holding. The circuit court is directed to restate its conclusions of law and render judgment in accordance with the ruling herein, and the costs in this court are directed to be taxed, one-half to the appellant and one-half to the appellees.

McCABE, J., did not participate in this decision.