JOSEPH PITTARD ET AL.

V.

ABRAM FOSTER.

</div>

1. EVIDENCE—HYPOTHETICAL QUESTIONS.—It is not competent for a witness, who is not an expert, to answer a hypothetical question, based upon facts not within his knowledge. Such a witness may testify to facts

within his personal knowledge, going to show the sanity or insanity of a person, and may give his opinion as to a person's sanity or capacity to transact business, but he can not give a professional opinion, or an opinion based on supposed cases, leaving the cases to be shown by other evidence. It does not change the rule that such hypothetical questions are asked on cross-examination.

2. INSTRUCTIONS—UNDUE INFLUENCE.—An instruction " That * * * the influence to control testator so as to render his making a will of no effect, must be such as to mislead him to the extent of making a will contrary to his own wishes " was altered by the court, striking out the words " own wishes " and inserting " duty." *Held*, that the modification was not error.

3. INSTRUCTIONS—MENTAL CAPACITY.—An instruction that " if the testator had mental capacity enough to understand the act he was performing," is erroneous. The *act* is simply the making the will or signing it. If the words, " the business he was engaged in " had been used, it would have been correct.

4. JUDGMENT NOT EVIDENCE OF MATTER WHICH CAME COLLATERALLY IN QUESTION.—The judgment of a court of concurrent or exclusive jurisdiction is not evidence of any matter which came collaterally in question, although within its jurisdiction, nor is the judgment evidence of any matter to be inferred by argument from it.

5. RECORD OF COURT SHOWING APPO.NTMENT OF CONSERVATOR NOT COMPETENT TO PROVE INABILITY TO MAKE WILL.—The issues formed in a county court, in a proceeding to have a conservator appointed, do not necessarily involve the same questions, necessary to be determined in settling the mental capacity to make a will. To make a valid will only requires the testator to be of sound mind the moment he is composing and executing the will, while a conservator should be appointed, when a man is generally incompetent to take care of his property, although there may be periods when he is perfectly competent to do so.

6. SAME.—To make the verdict of the jury and judgment of the county court any evidence would require proof *aliunde* the record to show what the issue and proof were and the argument and deduction. It could not be admitted under the rule making judgments in regard to personal *status* of parties, evidence, on the ground of public policy, for no consideration of public policy could justify a rule that would admit a record where it only bears remotely, if at all, upon the question.

ERROR to the Circuit Court of Mercer county; the Hon. JOHN J. GLENN, Judge, presiding. Opinion filed February 9, 1883.

Messrs. LANPHERE & BROWN, and Mr. L. DOUGLASS, for plaintiffs in error; as to the true test of the mental capacity

of a testator, cited Brown v. Riggin, 94 Ill. 560; Carpenter v. Calvert, 83 Ill. 60; Rutherford v. Morris, 77 Ill. 397.

Mr. JOHN C. PEPPER, for defendant in error; cited Calvert v. Carpenter, 96 Ill. 63; Carpenter v. Calvert, 83 Ill. 62.

LACEY, J.  This was a bill in equity brought by the defendant in error who was the brother of Jacob Foster, deceased, and also sole heir, against Joseph Pittard and Jacob Brown, who were the legatee and executor of his last will and testament, seeking to have the will declared null and void and to have his estate distributed according to law.  It was shown in the bill and answer that Jacob Foster made the pretended will in April or March, 1879, and that he died September 21, 1881.  That the said Foster, deceased, bequeathed by the said will, all his property except a mortgage to Joseph Pittard. That the will was probated October term, 1881, and letters granted to appellant, W. H. Brown, who acted as sole executor. The bill avers that Jacob Foster, deceased, at the time of executing said will was not of sound mind and memory, but was in his dotage, being eighty-four years of age, and his mind and memory so weak as to render him wholly incapable of making a just distribution of his estate; that Joseph Pittard, sole legatee except defendant in error, exercised undue influence over the testator, and resorted to falsehood and fraudulent practices, to induce him to execute said writing; that said Jacob was not aware of said practices and acts.

Answer was filed without oath, that being waived by the appellants, denying all the allegations of the bill and affirming the validity of the will.

To this answer replication was filed, and the following issue of fact was formed, to wit:

1.  Is the writing read in evidence, purporting to be the last will and testament of Jacob Foster, deceased, the last will and testament of said Jacob Foster or not?

A jury was impanneled and sworn to try the issue, and after a full trial found a verdict that the paper read in evidence was not the last will and testament of Jacob Foster, deceased.

Pittard et al. v. Foster.

Upon the plaintiffs' motion for a new trial being overruled, an appeal was taken to this court.

It is assigned for error that the verdict of the jury was manifestly against the weight of the evidence.

After a careful examination of it, we are of opinion that if there was no other cause of error assigned, the verdict should not be disturbed for that reason.

Plaintiffs in error also assign for error, the action of the court in allowing the appellee's counsel to ask, and the witnesses to answer certain questions on the cross-examination of the latter's witnesses, among which the following is a fair sample: Hugh A. Work was put on the stand by plaintiffs in error to prove, and did testify in substance, that in his opinion Jacob Foster was of sound mind and capable of making a will at the time the proposed will was made. On cross-examination the counsel of the defendant in error propounded this question to the witness: " If you had known that this man had accumulated six or eight thousand dollars, and got it into good securities and mortgages upon real estate, and into lands, and was letting somebody get them away from him, and he knew nothing about where they went to, what would you think?" The witness answered "that would put a different phase on it; I would think he was incompetent to take charge of his business." This was allowed over the objection of plaintiffs in error.

We think this was error; the witness was not an expert; he was not a physician or one having any technical knowledge of the question of insanity, and was not competent in law to answer such a question as that. It was simply a hypothetical question based upon facts not within the knowledge of the witness, and was a class of questions that an expert would only be competent to answer.

Witnesses other than experts may testify to facts within their personal knowledge going to show the sanity or insanity of a person, and may also give their opinion on the question of the sanity or unsoundness of mind of such person, or their capacity to transact business, but they are not allowed to give a professional opinion or an opinion based on

supposed cases, leaving the cases to be shown by other evidence. Experts only can do this. Nor does it change the rule that these questions were asked on cross-examination, for the reason that it was not proper cross-examination upon any matter that had been elicited on examination in chief.

It was also getting the benefit of the opinion of the witness upon certain matters under cover of cross-examination that could not have been allowed in chief, and was even more damaging than to have obtained it from witnesses that he himself had called. We think this was error on the part of the court.

Similar questions and similar answers were obtained by defendant in error from J. P. Jones, Thomas Jones, James Pollard, S. A. Brown and A. H. Jones under the same circumstances on cross-examination and tended very much to aggravate the error. James Brown was called as a witness by plaintiffs in error and after giving his knowledge as to Jacob Foster, which showed rather an intimate personal acquaintance with him, was by them asked this question: "In your judgment what was his condition as to sanity or insanity from what you saw and knew of him in March, 1879?" The answer to this question was ruled out by the court against the objection of plaintiffs in error. We think that this was error. It tended to prove the issue, and it was competent to prove it by the witness's opinion based upon facts within his own knowledge.

The answer to similar questions propounded by plaintiffs in error to Robert Panley and L. D. Holmes, witnesses for them, was ruled out by the court and the ruling was alike erroneous. The hypothetical questions propounded to different witnesses by defendant in error where they did not answer favorably to him, did plaintiffs in error no damage and there was no harm done them. On cross-examination of Dr. C. G. Stewart, by counsel for the defendant in error, the court allowed the witness to be interrogated and to answer as to what he had heard in reference to Jacob Foster's nephew seeking to have a conservator appointed for him—said he heard that after the will was made. This was error—the proposed evidence was mere hearsay and was inadmissible. The same

error was committed in allowing Thurlow Page to answer a similar question in response to a question propounded by appellants on cross-examination.

We think it was improper for the court to allow Joseph Foster to testify against the objection of plaintiffs in error that he had filed a petition in April, 1879, seeking to have Jacob Foster declared a distracted person and to have a conservator appointed, in allowing him to state the reasons which induced him to do so, and permitting the petition to be introduced in evidence.

We see no objection to the introduction in evidence of the petition of Joseph Pittard, filed in the county court in January, 1880, showing that Foster was of unsound mind, and asking the court to appoint a conservator for him; nor showing the verdict of the jury and their finding that "Jacob Foster was old and in his dotage" and not capable of taking care of his property, for the purposes referred to hereafter, on commenting on the instructions. Joseph Pittard is the legatee and an interested party in this suit, and we see no objections to its admissibility as an admission against himself to be taken by the jury with all the other evidence for what it is worth.

Objection is further made to the modification by the court of a portion of the second of plaintiffs in error's instructions defining what the rule of law is as to undue influence in procuring the execution of the will, and as asked is as follows: " That if any degree of free agency or capacity remained in the testator, Jacob Foster, so that left to himself he was capable of making a valid will, then the influence to control him so as to render his making a will of no effect must be such as to mislead him to the extent of making a will contrary to his own wishes." The court altered it by striking out the words " own wishes " and inserting the word " duty " and gave it.

However much force there may be in the argument that a testator has no legal duty to perform in respect of making a will, hence there is no duty to violate, and therefore the instruction was wrong and misleading, it will be observed that the court had full warrant for the modification in opinions of the Supreme Court in Roe v. Taylor, 45 Ill. 491, and in Allman v. Pigg, 82 Ill. 149.

While there is no legal duty to perform, yet all recognize a moral duty resting upon a testator, in making his will, to treat all his children, and others, having peculiar claims on him, fairly and justly, and give each that fair consideration in the distribution of his property that a good man would, under all the circumstances, being capable of disposing of his property, if left to himself, the presumption would be that he would make a fair and just distribution of his property. Now, according to the doctrine laid down, in order to render the will void, that influence must be such as that the jury can see from all the evidence that the parties exercising the undue influence intended to mislead him and procure him by their influence to make his will contrary to his duty, well recognized in the code of morals and ethics; in other words, overcome what his will would have been if left to himself.

The other portions of the instruction clearly told the jury that his will must be overcome by the undue influence.

The instruction supposes a case where there is only mind enough remaining to make a will and where a designing party overcomes the powers of self-control and procures a will to be made without other cause appearing contrary to moral duty. If the testator was influenced by other considerations of his own to violate his moral duty the instruction could not apply; under such circumstances the words "contrary to his duty" would be equivalent to "contrary to his will." The modification was not error, nor the other modifications of the instructions of defendant in error.

The eighth of plaintiffs in error's instructions, as the third and ninth, were given in substance in other instructions of plaintiffs in error, and the refusal to give these was not error. The third instruction did not lay down the law correctly as to the mental capacity required to make a valid will instead of saying that if the testator had mental capacity enough to understand the act he was performing, the instruction had used the words "the business he was engaged in," that would have been sufficient.

The *act* was simply making the will or signing it. The business he was engaged in would import that he understood

Pittard et al. v. Foster.

the whole scope and import of it. The third, fourth, fifth and seventh instructions given for defendant in error were sufficiently accurate and no error is perceived in giving them. The sixth and eighth instructions given by the court on the part of the defendant in error are objected to. These instructions are in substance the same and tell the jury "That the record of the Circuit Court of Mercer county as made and entered on the 10th day of February, 1880, in the matter of Jacob Foster, a person of unsound mind, imports verity at the time it was entered, and its truth and verity at that time can not be contradicted nor impeached, and it is conclusive of the fact that, at the time it was entered or made, Jacob Foster was of unsound mind and incapable of taking care of his property and making a will, and if the jury believe from the evidence that Jacob Foster was in the same unfit and incapable condition of mind and memory when he made or signed the paper purporting to be his will, as he was at the time the finding and judgment of the county court was had and made, then the said Jacob Foster was incapable of making a will, and the jury should so find by their verdict." These instructions are erroneous. For, first, they are argumentative. If the jury should find that the testator was of unsound mind or not legally capable of making a will at the time the purported will was made, a point upon which the jury were fully instructed, why refer to his condition at the time the record was made? The effect could only have been to emphasize his condition at the date of the record and to draw inferences therefrom. Second, the jury are instructed that the judgment in the county court was conclusive of his incapacity to make a will at that time. This we deem erroneous. We do not regard the issues formed in the county court in the proceeding to have a conservator appointed necessarily involve the same questions that are necessary to be determined in settling the mental capacity to make a valid will.

And in all cases neither the judgment of a court of concurrent nor exclusive jurisdiction is evidence of any matter which comes collaterally in question, though within their jurisdiction, nor of any matter to be inferred by argument from the judgment. 1 Greenl. Ev. Sec. 528. In Whole v. Whole, 71 Ill.

510, the court say, upon a similar question, that "A judgment or decree is not evidence upon a question which was only collaterally drawn in question, nor to any matter incidentally drawn in question, or where it is to be inferred from the judgment only by argument or construction." The point in issue was as to the testator's mental capacity at the time the will was made in March or April, 1879, not whether there ought, under the provisions of the statute, to be a conservator appointed to take charge of his property to prevent him from dissipating or wasting it.

To make a valid will only required him to be of sound mind at the moment he was composing and executing it. A conservator should be appointed if he was generally incompetent to take care of his property, though a portion of the time he might be competent; for the danger of wasting his property would exist at the times when he was incompetent, though at the moment of the appointment the testator might have been competent. Hence, to make the verdict of the jury and judgment of the county court any evidence, it would require proof *aliunde* the record to show what the issue and proof were, and argument and deduction. The question of the judgment only bore remotely on the issue, and under the rule was no evidence.

Again, the judgment was not between the same parties, nor was there any mutuality about it. 1 Greenl. Ev. Secs. 523, 524. Nor could it be admitted under the rule laid down in Sec. 525, 1 Greenl. Ev., making judgments in regard to personal *status* of the parties, or relations of the party, such as marriage, divorce, bastardy, settlement and the like evidence, on the grounds of public policy, for no considerations of public policy and convenience could justify a rule that would admit this record where it only bears remotely, if at all, upon such a controversy as this.

This judgment, if admissible at all, could only be so in order to let in proof of what Joseph Pittard swore at the investigation, or in connection with his affidavit, if he made one, when the proceedings to have a conservator appointed were instituted. 1 Greenl. Ev. Sec. 527.

And in that case all that would be necessary would be to introduce enough of the record to show there were such proceedings to which such testimony or affidavit could apply. We are of the opinion that the fact that Jacob Foster, if it be a fact, was wholly unfit to make a will at the time the conservator was appointed, may be shown as evidence tending to establish the issue, the jury to determine what weight it shall have. The judgment of the county court is not evidence by which to prove such fact. Nor is the verdict of the jury, and should not have been admitted for such purpose.

The giving of those instructions was therefore error. The decree of the court for the above reasons is reversed and the cause remanded.

<div align="right">Reversed and remanded.</div>