## GREEN v. STATE.

Opinion delivered June 9, 1894.

*Homicide—Insanity—Evidence.*

On a trial for murder, where the evidence to establish the defense of insanity was confined to a period not exceeding ten years before the killing, it is not admissible in rebuttal to prove that defendant was sane at a period twenty years prior to the killing, if it throws no light upon the killing.

Appeal from White Circuit Court.

GRANT GREEN, JR., Judge.

The appellant *pro se.*

1.   The court erred in refusing instructions 2 and 4 asked for defendant upon the subject of *partial insanity.* The doctrine of *partial insanity* is too well established to need citation of authorities. 48 Wis. 294; Wharton's Cr. Law, sec. 41; 11 A. & E. Enc. Law, p. 111 and notes; 54 Ark. 588.

2.   The court erred in allowing the witnesses, Summers, Alexander and Painter, to testify as to the life and relations of defendant in Tennessee twenty-one years before the homicide. *Holder* v. *State*, 58 Ark.

3.   The statements made by deceased to Patterson, in the absence of defendant, were admissible.

*James P. Clarke*, Attorney General, and *Chas. T. Coleman* for appellee.

1.   The testimony objected to was admissible. She killed her husband. The defense was insanity. Evidence was admitted that tended to show that, for more than ten years, she had been a monomaniac on the subject of her husband's treatment of her. She said she killed him because he mistreated her. Thus connected, her relations with him twenty years before the homicide were admissible.

2. The testimony of Patterson was properly admitted. The actions and declarations of a defendant after the commission of the offense are always admissible in evidence against him, especially where insanity is set up as a defense.

3. The instructions are taken from 54 Ark. 588 and 55 id. 259, and correctly state the law.

Wood, J. Appellant was charged with murder in the first degree, convicted of murder in the second degree, and sentenced to the penitentiary for five years. The defense was insanity. Deceased was the husband of appellant, and, if she was sane, the crime was most unnatural and diabolical. As we would not disturb the verdict from the evidence presented by this record, no good purpose could be subserved by setting out the details of the shocking transaction. If the appellant was insane, the proof tended to show that her insanity was superinduced by the cruel and inhuman treatment by deceased of her and of their children. The evidence on the question of insanity, on the part of the defense, was confined to a period of eight or ten years before the murder, and much proof was had as to her eccentricities and strange conduct during all that time. Suffice it to say that she seemed to have been brooding over family troubles growing out of the ill treatment of herself and children by her husband, and her manner and conduct was so peculiar and unnatural as to impress many of her neighbors, and others who saw her, that she was insane. Others were not so impressed, but thought her sane. Experts pronounced such conduct as disclosed by the record as that of an insane person. The verdict of the jury on all these controverted questions must be taken as conclusive, since there was evidence legally sufficient to support it. Williams v. State, 50 Ark. 511. Appellant insists upon reversal here for only three of

the sixteen assignments of error in the motion for new trial.

1st.  Because the court erred in refusing to give instructions numbered two and four as asked for by the defendant.

2d.  Because the court erred in permitting the State to prove, by David Summers, J. A. Alexander and G. D. Painter, the life and relations of the defendant some twenty years ago in the State of Tennessee, and that she had separated from a former husband in said State.

3d.  Because the court erred in permitting the State to prove by M. H. Patterson statements of the deceased, G. N. Green, made to him on Monday morning after he had been injured on Friday night, which statements were in part made in the absence of the defendant.

1.  There was no error in refusing to give the prayers asked.  This court, through Justice Hemingway, in the cases of *Bolling* v. *State*, 54 Ark. 588, and *Smith* v. *State*, 55 Ark. 259, treated the questions presented by these requests exhaustively, and announced the law applicable in such cases.  We find nothing new calling for our discussion.  The law declared by the court in this case is in harmony with the doctrine of those cases.  The rejected prayers, if applicable at all to the facts proved, were covered by the seventh given at the instance of the State and the third given on behalf of defendant.

2.  David R. Summers, over the objection of the dedefendant, testified that he knew the defendant about twenty years ago in Rutherford county, Tennessee ; that she was then married to one Phelps, and had three children ; that Phelps moved to Nashville, but the defendant soon returned with the children ; that, shortly after this, she and the deceased, Green, disappeared, and witness carried her children to Phelps at Nashville.  The testimony of the other witnesses objected to was substantially the same as this.

In *Clinton* v. *Estes*, 20 Ark. 219, where the question under consideration was the mental capacity of a party to make a contract at a particular time, Chief Justice English said: "To determine the mental capacity of an individual at a particular time, it is often necessary to inquire into the state of his health, his appearance, conduct, habits, etc., for some time before and after the period in question. No absolute rule, limiting the extent of the examination to fixed periods, can therefore safely be laid down, in consequence of the variety of cases which occur." This is applicable also to criminal cases. Where the issue is insanity, the examination of witnesses may take the widest range, going into the personal history of the defendant for any number of years prior to the commission of the act for which he is accused, showing temper, character, disposition, etc. And if it appears that the insanity alleged is hereditary, the inquiry may extend even beyond—to the ancestors and collateral relations of the defendant, if so near in blood as to indicate that the insanity of which proof is made may have been transmitted. Buswell on Insanity, p. 249; *People* v. *Garbutt*, 17 Mich. 10; *United States* v. *Holmes*, 1 Clifford, 98.

But this broad statement of the rule is, of course, subject to the salutary limitation which must govern in the production of all evidence, i. e., "the evidence must tend to prove the issue." 1 Greenleaf, Ev. sec. 51.

Had the evidence on the question of insanity covered the whole of defendant's life, it would have been perfectly legitimate for the State in rebuttal to have gone over the same ground, and to have show nany acts tending to prove sanity. But the inquiry on behalf of defendant was directed only to a period of eight or ten years antedating the killing. It is not shown that defendant gave any evidences of insanity before that time. Sanity is the normal condition, and will be presumed until the

contrary is proved. The only effect of this testimony, so far as the question of insanity is concerned, was to show that defendant was sane twenty years before, at a time when the law itself presumed her sanity. 1 Wharton & Stille's Med. Jur. sec. 247; *Sayres* v. *Com.* 88 Penn. St. 291; *United States* v. *Holmes*, 1 Clifford, 98, and authorities there cited.

The testimony of these witnesses did not even throw a glimmer of light upon the condition of defendant's mind at the time of the killing, and was wholly disconnected with any circumstance that did. It was therefore irrelevant, and should not have been admitted for any purpose. If the defendant was sane, the isolated fact that, twenty years before, she had abandoned her husband and three children for a liaison and marriage with another man, could afford no explanation of her conduct in killing that man.

What was the most probable and natural effect of such testimony with the jury? It revealed a character wanting in virtue, oblivious to social refinements, and forgetful of the obligations of the marital state. Evidence of such moral obliquity could only tend to degrade the defendant before the jury, and prejudice their minds against her. We can not say, with this evidence before the jury, that the legitimate proof received that impartial·consideration to which the accused was entitled.

3. The statements of deceased to the sheriff were not prejudicial to appellant.

For the errors indicated, the judgment is reversed, and the cause remanded.