## Taylor *v.* Taylor et al.

[No. 21,399. Filed November 29, 1910.]

1. WILLS.—*Testamentary Capacity.—Evidence.—Discretion.*—Much latitude is permissible in the admission of evidence to prove testamentary capacity. pp. 673, 675.

2. WILLS.—*Testamentary Capacity.—Prior Adjudication of Insanity.—Effect.*—A prior and existing adjudication of insanity constitutes *prima facie*, but not conclusive, evidence of the insanity of a testator. pp. 674, 677.

3. WILLS.—*Testamentary Capacity.—Subsequent Adjudication of Insanity.—Prior Insanity.*—Evidence of a subsequent adjudication of testator's insanity is admissible in a will contest, where it is coupled with evidence of prior and contemporary insanity. p. 674.

4. WILLS.—*Testamentary Capacity.—Evidence.—Relevancy.*—Any relevant evidence tending to show a testator's insanity is admissible in a will contest. p. 676.

5. WILLS.—*Testamentary Capacity.—Evidence.*—No evidence concerning the testator's mental capacity is admissible in a will contest unless it tends to show testator's testamentary capacity at the time the will was executed. p. 676.

6. APPEAL.—*Exclusion of Evidence.—Reversal.*—The exclusion of competent evidence will cause a reversal, where it tends, directly or indirectly, to prove a material issue. p. 676.

7. WILLS.—*Insanity.—Lucid Intervals.—Judicial Notice.*—Courts judicially know that some people become of unsound mind, and that some people of unsound mind have lucid intervals when they are competent to execute wills. p. 677.

8. WILLS.—*Testamentary Capacity. — Subsequent Adjudication.— Weight of Evidence.*—Evidence that five and a half years after the execution of her will a testator was adjudged of unsound mind is remote evidence only of her incapacity at the time of executing the will. p. 677.

9. WILLS.—*Testamentary Capacity.—Subsequent Adjudication of Insanity.—Relevancy.*—Proof of an adjudication of testator's insanity, five and one-half years after the execution of the will in contest, is not so clearly competent, or material, as to influence

the verdict, where there was direct evidence on the question of sanity at the time of such execution, and it may properly be excluded. p. 677.

10. EVIDENCE.—*Hypothetical Questions.—When Improper.—Question for Jury.*—Where hypothetical questions are grossly exaggerated in the assumption of facts they should be excluded, but ordinarily the party may assume facts which the evidence reasonably tends to establish, the weight thereof being a question for the jury. p. 677.

11. EVIDENCE. — *Hypothetical Questions. — Cross-Examination.* — Opinions of witnesses in answers to hypothetical questions may be tested by cross-examination, or the facts assumed in such questions may be varied or new ones substituted. p. 679.

12. EVIDENCE. — *Hypothetical Questions. — Assuming Facts not Proved.—Instructions.*—The assumption of facts not proved, in a hypothetical question, is ordinarily cured by an instruction not to attach any weight to the opinion in answer thereto. p. 679.

13. APPEAL.—*Certiorari.—Instructions.*—Where an instruction is certified, on a writ of *certiorari,* correcting a defective one in the transcript, alleged errors based on the defective instruction are removed. p. 679.

14. WILLS.—*Description of Land.*—Where the description of the devised land is defective but the land may be located therefrom, the description will be held sufficient, the only purpose of a description being to furnish the means of identification. p. 679.

15. WILLS.—*Testamentary Capacity.—Devises of Lands.—Egress and Ingress.—Ways Appurtenant.—Instructions.*—Where a contestant seeks to show that the testator was of unsound mind because she devised lands without reserving a right of way therefrom to the public highway, an instruction that if there existed lanes or ways therefrom, such ways would be considered as appurtenant to the devises, and in the absence thereof, ways over land owned by her would be implied as of necessity, is not prejudicial to such contestant. pp. 681, 682.

16. EASEMENTS.—*Appurtenant.—Necessity.*—A way of necessity may become a way appurtenant, but a way appurtenant may arise from necessity, grant, or prescription. p. 682.

17. APPEAL.—*New Trial.—Exclusion of Evidence.*—Failure to make the exclusion of evidence a ground for a new trial prevents the consideration of such exclusion, on appeal. pp. 683, 684.

18. APPEAL.—*Admission of Evidence.—Failure to Except.*—The failure to except to the admission of evidence over objection is fatal to any question thereon on appeal. p. 683.

From Delaware Circuit Court; *Joseph G. Leffler,* Judge.

Action by Henry H. Taylor against Samuel K. Taylor

and another. From a judgment for defendants, plaintiff appeals. *Affirmed.*

*C. B. Templer, Thompson & Thompson* and *R. W. Sprague,* for appellant.

*Orr & Orr,* for appellees.

MYERS, C. J.—Appellant filed his complaint July 3, 1907, making appellees Samuel K. Taylor, who is his brother, and the executor, defendants, to set aside and revoke the probate of the will of his mother, on the grounds of her unsoundness of mind, and undue influence exerted over her in the execution of her will.

The sole error presented is upon overruling the motion for a new trial.

The testatrix was stricken with apoplexy July 12, 1899, at the age of sixty-three years, and died in January, 1907. The will was dated July 3, 1900. The stroke of apoplexy affected her speech, but she improved so that she could talk. It affected her locomotion and the use of her entire left side, so that she could not walk thereafter, but was moved about in a wheel-chair. When first paralyzed her mouth and one eye were drawn, but these conditions became almost normal before the will was made. The use of her left arm and left leg was never restored. She had a second stroke of apoplexy in July, 1906. She was the wife of a farmer, and owned 121 acres of land, upon which she and her husband resided. She became a widow in 1905. She managed her domestic and household affairs, through directions to others, from a period shortly after the first stroke until her death. By her will she bequeathed all her personal property to her husband, devised forty-one acres of land to him for life, with remainder to her son Samuel K. Taylor, and also devised to said Samuel forty acres additional, and to appellant forty acres. Her husband had been for many years an invalid. She informed the justice of the peace, who drew her will, as to the disposition of her real property,

which was irregular in outline.  After reviving from the
stroke, she directed her servants in reference to the house-
hold affairs, the purchase of clothing, the garden, the fowls
and the marketing, and inquired about, and took part in
the arrangements for, the farming operations.  At times she
cried without any expressed reason for it, though at one
time she seemed to be affected by the possible results her
affliction might have upon her husband and their property
affairs.  She read newspapers, inquired about the neigh-
bors and their families, and laughed and talked some with
her closest friends, but was not able to talk freely.  Samuel
K. Taylor and his wife waited on her continuously for about
nine months.  The physicians testified as to the tendency of
apoplexy to impair the mental faculties, and as to its ten-
dency to be progressive.  The evidence is conflicting as to
soundness and unsoundness of mind at the time the will was
executed.  With no claims of undue influence, the jury
found for appellees.  Upon a complaint filed January 6,
1906, the testatrix was declared of unsound mind and in-
capable of managing her estate.  Upon the trial, the con-
testant offered in evidence the petition, answer of the
1.    clerk, and the judgment of the court.  This evidence
was excluded, and error is here predicated on that
action.  There was no evidence given or offered that the
testatrix was of unsound mind or enfeebled prior to the
stroke of apoplexy.  The evidence offered was of a status
found to exist five and one-half years afterward.  It cannot
be doubted that much latitude in point of time, both before
and after the transaction under inquiry, is allowable in de-
termining the question of soundness or unsoundness of mind.
The reason for the rule is apparent.  The consistency or in-
consistency of acts or declarations, differences in conduct
towards family, relatives and friends, and differences in
habits of life at different times, if they exist, are relevant
to, and sometimes highly indicative of conditions of mind,

and therefore competent for the purpose of determining that question. In some states the statute authorizes the inquiry *de lunatico* to be extended to a time anterior to the inquiry itself, but our statute does not authorize an inquiry to be made of prior conditions, or of a status formerly fixed;

2. though we recognize the *prima facie* status fixed by an adjudication of insanity, we hold that even though a will is executed after an adjudication of unsoundness, mental capacity may be shown. *Harrison* v. *Bishop* (1892), 131 Ind. 161, 31 Am. St. 422.

Reliance is based, as to the admissibility of this evidence, on the case of *Nichol* v. *Thomas* (1876), 53 Ind. 42. This was an action to set aside a deed upon the ground of the insanity of the grantor. The court admitted in evidence, as tending to show unsoundness when the deed was executed, a judgment declaring the grantor of unsound mind, rendered in a proceeding instituted seven and one-half years later. Other evidence tended to show that he had been of unsound mind for fifteen or twenty years before the deed was executed. The testimony of Doctor Mendenhall, that the grantor, for four years previously, had been of unsound mind, was held to have been erroneously excluded. This evidence tended to show the mental condition of the grantor to within three and one-half years of the date of the deed. While it was held that both the record of the adjudication and the testimony of Doctor Mendenhall were admissible, the opinion does not point out the grounds of the admissibility of the evidence. It is quite clear that Doctor Mendenhall's

3. testimony was admissible and competent, because he was an expert, and his testimony was coupled with evidence that the impaired mental condition of the grantor had existed for many years prior to the conveyance. The doctor's testimony was directed specifically to detailed acts denoting mental condition, but that is a very different character of evidence from the record of a subsequent adjudication of unsoundness of mind, and where no prior weakness is

shown. Evidence of prior acts may be relevant as tending to show continuance of a condition shown to have existed long previously—a showing not present in this case—on the presumption of the continuance of a condition of mind once shown to exist. But a relevant fact may be excluded without constituting harmful error, so that in that case the admission of the record was relevant and clearly not harmful, owing to the presumption of continuing incapacity, while the exclusion of the testimony of Doctor Mendenhall was harmful by reason of the same presumption, and the special facts disclosed by Doctor Mendenhall. That this was the view of the court in that case is disclosed by the citation of *Rush* v. *Megee* (1871), 36 Ind. 69. A number of cases are

1. cited by appellant holding that an adjudication of insanity is competent evidence, even though the adjudication is subsequent to the execution of the deed or will. An examination of these cases discloses that, with one or two exceptions, they are cases where under the statute, in proceedings *de lunatico*, provision was made for a retrospective finding, and it had been made; in others, the adjudication was made after the date of the transaction inquired into, and admitted, and the admission held not error; others, where there was evidence of mental incapacity prior to the date under inquiry; other cases are instances where adjudication had preceded the date of the question in controversy, and involved the effect of the adjudication as to whether it was conclusive, or mere *prima facie* evidence of insanity. While large latitude should be allowed in all such proceedings, and while there is no agreed limit of time within which the prior or subsequent condition is to be considered, the circumstances of each case, in the very nature of things, ought to control, and the discretion of the trial judge, though reviewable for abuse, ought to have weight. *Enlow* v. *State* (1900), 154 Ind. 664; *Bower* v. *Bower* (1895), 142 Ind. 194, 197.

The question in such cases is necessarily one of relevancy.

*Howes* v. *Colburn* (1896), 165 Mass. 385, 43 N. E. 125; *Lane* v. *Moore* (1890), 151 Mass. 87, 23 N. E. 828, 21 Am. St. 430; *Shailer* v. *Bumstead* (1868), 99 Mass. 112; *Herster* v. *Herster* (1889), 122 Pa. St. 239, 16 Atl. 342, 9 Am. St. 95; *Robinson* v. *Hutchinson* (1853), 26 Vt. 38, 60 Am. Dec. 298; *In re Merriman's Appeal* (1896), 108 Mich. 454, 66 N. W. 372; *Pittard* v. *Foster* (1882), 12 Ill. App. 132; 1 Wigmore, Evidence §233, and cases cited; 3 Wigmore, Evidence §1671, and cases cited.

There are well-considered cases holding, as wholly inadmissible, a record of adjudication, after a period as short as two years subsequent to the execution of the instrument, as only fixing a status as of the date of the adjudication. *Howes* v. *Colburn, supra; Entwistle* v. *Meikle* (1899), 180 Ill. 9, 54 N. E. 217; *Rhoads* v. *Fuller* (1897), 139 Mo. 179, 40 S. W. 760; *Chase* v. *Spencer* (1907), 150 Mich. 99, 113 N. W. 578; *Knox* v. *Haug* (1892), 48 Minn. 58, 50 N. W. 934; *In re Pinney's Will* (1880), 27 Minn. 280, 6 N. W. 791; *Hopson* v. *Boyd* (1845), 45 Ky. 296; *Shirley* v. *Taylor's Heirs* (1844), 44 Ky. 99; Page, Wills §402.

The inquiry must be sufficiently near in point of time to aid the jury in determining the mental condition at the time of the execution of the will. *Enlow* v. *State, supra; Herster* v. *Herster, supra; Lane* v. *Moore, supra; Nonnemacher* v. *Nonnemacher* (1894), 159 Pa. St. 634, 28 Atl. 439; *Gorgas* v. *Saxman* (1907), 216 Pa. St. 237, 65 Atl. 619; *Green* v. *State* (1894), 59 Ark. 246, 27 S. W. 5.

The argument here is simply an inference from a remote fact. In the case of *McCoy* v. *Jordan* (1904), 184 Mass. 575, 69 N. E. 358, it was held that where a man had died of a named disease, which might have had some effect upon his mind, that it was properly excluded as being too much of a contingency. The most that could be claimed—and it is so claimed by appellant—is that the evidence offered might tend to show that one stricken with

apoplexy might be affected mentally from that fact, but there was direct evidence given on that subject. It is true that the court will not stop to inquire as to the effect of rejecting material and competent evidence offered, but will reverse in such case, but it must be material and competent evidence, going to some material point in issue, and not speculative in its character, or involving some remote matter. In other words, it must be evidence from which, though not necessarily direct, the jury might draw an inference of fact, and which, if believed by them to be true, might have an effect upon the verdict. We know, as a matter of common knowledge, that sane people become of unsound mind; therefore there must be some point of time when they thus become. We know, also, that persons of unsound mind may have intervals of such lucidity of mind that they are competent to execute wills. (*Harrison* v. *Bishop, supra*), hence the fact that a witness testified that a person was of sound mind at one time is only remotely, if at all, affected by the fact that the same person five and one-half years later, filed a petition asserting such person to be of unsound mind and incapable of managing his or her own estate at that time. *Waterman* v. *Whitney* (1854), 11 N. Y. 157, 62 Am. Dec. 71.

The adjudication is only *prima facie* evidence of mental incapacity. *Blough* v. *Parry* (1896), 144 Ind. 463, 493.

We cannot perceive that the evidence was so clearly competent or so material that, if given, it could have had any effect or influence in determining the question of the mental capacity of the testatrix when the will was executed, when there was direct evidence to the point. Complaint is made of the admission of the testimony of Doctor Kemper upon a hypothetical question, in which many of the facts are claimed to be assumed. It is true that a hypothetical question, if it is to be of any value, should embrace facts of which there is some evidence,

or which may fairly be inferred from the evidence. The specific objection was, that there was no evidence as to the extent and value of the property of appellant, or that the testatrix was at prayermeeting and gave testimony, and that her husband had no property. There was evidence that appellant had married and left home at the age of eighteen years; that appellee Samuel K. Taylor, the younger, had remained at home until about twenty-two years of age, and had assisted his mother upon the farm, his father being an invalid for many years; and that prayermeetings were held at her home. No specific evidence has been pointed out to us as to the husband's being without property, but it is shown that the land was conveyed to the testatrix in 1860 by her father, and that her husband had been for many years an invalid. If facts are assumed in a hypothetical question which are clearly so exaggerated as to impair the opinion, or are such manifest assumptions as to be misleading, confusing and outside the evidence, or fair inferences from the evidence, they should be excluded, and their admission might be a prejudicial error in a given case. But the weight of the opinion is a question for the jury, and depends upon the evidence, admissions or facts proved upon which it is based. *Louisville, etc., R. Co.* v. *Wood* (1888), 113 Ind. 544; *Deig* v. *Morehead* (1887), 110 Ind. 451; *Louisville, etc., R. Co.* v. *Falvey* (1886), 104 Ind. 409; *Guetig* v. *State* (1879), 66 Ind. 94, 32 Am. St. 99; *Howes* v. *Colburn, supra; Chicago Union Traction Co.* v. *Roberts* (1907), 229 Ill. 481, 82 N. E. 401; *Fairchild* v. *Bascomb* (1862), 35 Vt. 398; 17 Cyc. 244 *et seq.*

A party may put his hypothetical case as he claims it to be proved, or within reasonable inferences from the evidence, and the jury determines whether it is sufficiently supported by the evidence to be of any value. *Louisville, etc., R. Co.* v. *Wood, supra; Deig* v. *Morehead, supra; Louisville, etc., R. Co.* v. *Falvey, supra; Goodwin* v. *State* (1884), 96 Ind. 550; *Grand Lodge, etc.,* v. *Wieting* (1897), 168 Ill. 408,

61 Am. St. 123; *Forsyth* v. *Doolittle* (1877), 120 U. S. 73, 7
Sup. Ct. 408, 30 L. Ed. 586; *Kerr* v. *Lunsford* (1888), 31
W. Va. 659, 8 S. E. 493, 2 L. R. A. 668; *Cowley* v. *People*
(1881), 83 N. Y. 464, 38 Am. Rep. 464; *Schissler* v. *State*
(1904), 122 Wis. 365, 99 N. W. 593.

The opinion may be tested by cross-examination, by omissions and additions to the original question, or by an entirely new state of facts; and that was done in this instance. *Bower* v. *Bower, supra; Louisville, etc., R. Co.* v. *Wood, supra; Goodwin* v. *State, supra; Davidson* v. *State* (1893), 135 Ind. 254; *Johnson* v. *Thompson* (1880), 72 Ind. 167.

Even if the questions were faulty by the admission of some facts not supported by the evidence, so that, uncorrected, an error might occur, it was corrected by an instruction that if any of the material facts contained in the question were not shown by the evidence to be true, they were not to be taken as true, because embraced in the question, and if of such character as to destroy the reliability of the opinion based upon the hypothesis stated they should attach no weight whatever to the opinion. This instruction was certainly as favorable as appellant could ask. *Thomas* v. *Dabblemont* (1903), 31 Ind. App. 146.

Criticism is made of instruction seven. By *certiorari* it is disclosed that the instruction, as originally copied into the transcript, omitted the part which has been supplied by the *certiorari;* so the objection is removed. The will is attacked as showing mental incapacity because of alleged indefiniteness and mistakes of description.

The land consists of the west half of the northeast quarter, twenty-one and eighteen one-hundredths acres off the east half of the northwest quarter, and the south twenty acres off the east half of the northeast quarter, all in section thirty-one, township twenty-one north, range ten east, in Delaware county. The only public highway on which any part of the land abuts runs north and south along the

east line of the twenty acres. The residence and farm build-
ings are in the northwest corner of this twenty-acre tract,
and a lane ran west from the highway to the residence and
farm buildings. By the will forty-one and eighteen one-hun-
dredths acres off the east end of the tract, which is de-
scribed as the one deeded to testatrix by her father, was
devised to her husband for life, and to Samuel K. Taylor in
fee, except one-half acre deeded to Val Taylor in the north-
east corner of the tract; and the east half of the remaining
eighty acres was devised to Samuel K. Taylor, and the west
half, to appellant. It appears from the evidence that the
half acre is in the southeast corner of the twenty-acre tract
that abuts on the highway. It is insisted that the descrip-
tion "forty-one and eighteen one-hundredths acres off the
east end of the one hundred twenty-one and eighteen one-
hundredth-acre tract," is an impossible one, and that this,
together with the fact that the excepted half acre is in the
southeast corner, instead of the northeast, shows a lack of
comprehension of her property by the testatrix. We do not
think there could be any difficulty in locating the property
intended by this will, as the forty-one and eighteen one-hun-
dredths acres lying farthest to the east, and the fact that
the one-half acre is described as located in the northeast in-
stead of the southeast corner, being designated as the prop-
erty sold to Val Taylor, renders the tract easily identified,
and aids in identifying the forty-one and eighteen one-hun-
dredths acres, by reason of the exception therefrom. There
could have been a more accurate description, but calling it
the east end instead of the east side is of little consequence,
when the whole description is considered together. What was
intended is reasonably apparent. The house was on the
twenty-acre tract, and the barn on the adjoining eighty-acre
tract, and they would naturally go together, especially when
the testatrix was making provision for her invalid husband.
*Warner* v. *Marshall* (1906), 166 Ind. 88; *Elsea* v. *Adkins*
(1905), 164 Ind. 580; *Ames* v. *Ames* (1910), 46 Ind. App.

597; *Black* v. *Richards* (1884), 95 Ind. 184. It is not the office of a deed or will to describe the property, but if it furnishes the means of identification it is sufficient. *Pate* v. *Bushong* (1903), 161 Ind. 533, 63 L. R. A. 593, 100 Am. St. 287; *Edens* v. *Miller* (1897), 147 Ind. 208; *Rook* v. *Wilson* (1895), 142 Ind. 24, 51 Am. St. 163; *Priest* v. *Lackey* (1895), 140 Ind. 399; *Groves* v. *Culph* (1892), 132 Ind. 186.

It appears from the evidence that a lane ran west from the public highway to the barn lot, which was about one-half acre in area and was on the east side of the eighty-acre tract, and west of the house; that there was another lot west of, and communicating with, the barn lot. There is some evidence that from this west lot a lane extended west to the west line of the farm. Under this state of the evidence, which was argued by appellant as tending to show the mental incapacity of the testatrix in furnishing no outlet to the land devised to appellant, the following instruction was given: "If you find from the evidence that the tract of land devised by the instrument in question to Henry H. Taylor, the plaintiff, and the one to Samuel K. Taylor, the defendant, or either of them, is without any public highway on their borders, and ingress to and egress from them was had at the time the will was made and at the death of Jane Taylor by means of a private lane or roadway leading from the public highway to said tract or tracts, over and across some other part or parts of Jane Taylor's farm, then such private lane or roadway would be appurtenant to said tract or tracts, and would pass by the devise under the instrument, and such owner could not lawfully be excluded from the use of such lane or roadway, but would have the right to its free use at all times in gaining access to such tract or tracts of land. Under such conditions, such tract or tracts would be entitled to have attached and appurtenant to them a way of necessity, or right of ingress to and egress from the continuous parts or tracts of said farm of Jane Taylor as had been formerly used by her for that purpose."

It is urged that this instruction is without any evidence
to support it, as to there being any private lane or roadway
leading to the land devised to appellant, and that it could
not be appurtenant, for the reason that one cannot have an
appurtenance in a property, the full title of which is in him-
self.    There was some evidence of a little lane extending
from the west side of the lot west of the barn to the west side
of the farm.    It must be borne in mind that the issue here
was not whether there was, in fact or in law, a way of in-
gress to or egress from the land devised to appellant, but as
to the mental capacity of the testatrix to make the will.    But
we infer from the record and the brief of counsel that the
fact that no provision was made for a way to this land was
a circumstance in determining the question of mental capac-
ity.    That may have been true, but this was not a case for the
determination of a way or no way, or where located, and
with the insistence upon the part of appellant, appellees were
entitled to an instruction upon the legal effect of the condi-
tions presented by the evidence as they claimed it to be, as
a presumption of law entering into the act of the testatrix
in the execution of the will.    The location, character and ex-
tent of the lanes, and their uses, were not gone into very fully
in the evidence, but there was some evidence of the use of
lanes intercepted by lots which extended from the highway
to the west side of the farm.

There is some confusion of legal terms and legal sequences
in the instruction, in the failure to note the distinction be-
tween a way of strict necessity, and a way appurte-
nant.    A way of necessity may become a way appur-
tenant, but a way appurtenant does not arise alone
from one of necessity; it may arise from grant or prescrip-
tion.    It will be noted that the language of the
instruction is directed to a case of a lane or way
leading to the rear tract, which furnished a way of
ingress and egress.    The fact that it might become a way
appurtenant, by the severance under the will, if a way

existed, or would arise from necessity from the severance, without regard to the existence of a way, could be of no consequence, for one or the other of these legal effects must arise irrespective of location, and could not affect the real issue in the case, unless it could be said that the failure definitely to refer to and provide a way, tended to show unsoundness of mind, which we think is too strained to become a necessary inference. The instruction is not a model, but, taken with the other instructions in the case, it could not have led the jury to any other conclusion than that it must appear that a way existed, which was more favorable to appellant than he was entitled to; and even though it could be urged that the failure to provide a way tended to show unsoundness of mind, such failure was just as potent on the issue of unsoundness of mind, by the instruction as drawn, as it would have been without the instruction.

George W. Eber filed the petition in 1906 to have the testatrix declared of unsound mind and incapable of managing her estate. He was a witness in the case, and testified 17. to her soundness of mind at the time of the execution of the will. He was asked whether he was the same George W. Eber who had filed the petition stating that testatrix was of unsound mind. He answered that he was, and on appellee's motion the answer was stricken out and an exception taken. This action, however, was not assigned as cause for a new trial.

One Sunderland was a witness in the case, and testified as to the testatrix's soundness of mind when the will was executed. He was asked whether he had not testified in 18. the insanity proceeding that she "was of unsound mind, and had been for six years." The court, over objection, admitted the answer of "No," saying: "It is proper for the purpose of impeachment only." No exception was taken by appellant, and, of course, no question is here presented.

A witness who had testified that the testatrix was of sound

mind when the will was executed, on cross-examination was asked: "She did afterward get to be of unsound 17. mind, didn't she?" An objection to this question was sustained. A physician who had attended the testatrix at the time she was first stricken with apoplexy—about the time the will was executed—and again after the second stroke, testified that she was of sound mind when the will was executed, and so continued until about the time of the death of her husband. On cross-examination he was asked: "She did become of unsound mind, didn't she, Doctor?" and upon objection that defendant had asked as to her mental condition down to the death of her husband, and that the inquiry should be limited to that time, the objection was sustained. Neither of these questions was presented or saved by the motion for a new trial, and are not reviewable here. *Pulley* v. *State* (1910), *ante*, 542.

We have not been able to perceive any ground of objection to the proceedings or judgment to be well taken, and the judgment is affirmed.