Nonnemacher et al., Appellants, *v.* Nonnemacher et al.

*Marriage—Evidence—Administration—Decedents' estates.*

On an issue to determine the sanity of an intestate at the time of his marriage to a woman who claimed administration on his estate, as his widow, the inquiry for the jury is as to decedent's mental condition at the very time of the marriage ceremony; but evidence of his condition both before and afterwards is proper for consideration by the jury, as bearing upon the question of his mental condition at the time of the marriage.

Argued Jan. 29, 1894.   Appeal, No. 409, Jan. T., 1893, by plaintiffs, Lewis M. Nonnemacher et al., from judgment of C. P. Lehigh Co., Jan. T., 1893, No. 13, on verdict for defendants, Pauline Nonnemacher, alleged widow of Molton Nonnemacher, deceased, et al.   Before GREEN, WILLIAMS, McCOLLUM, DEAN and FELL, JJ.

Issue to determine decedent's mental capacity at the time of an alleged marriage between himself and Pauline Weibert or Nonnemacher.

The questions submitted under the issue were: (1) Whether or not, on Oct. 25, 1891, a ceremonial marriage took place between Molton Nonnemacher and Pauline Nonnemacher, or Pauline Weibert. (2) Whether, at the time of marriage, Oct. 25, 1891, Molton Nonnemacher was of sound mind, and whether or not he had at said time of marriage sufficient mental capacity to enter into a contract of marriage, and to understand the nature and obligation of such contract. (3) Whether or not, before Oct. 25, 1891, Molton Nonnemacher and Pauline Weibert cohabited as husband and wife, and whether or not while they so cohabited it was reputed that they were husband and wife. (4) Whether or not, before Oct. 25, 1891, there was a contract by and between Molton Nonnemacher and Pau-

line Weibert that they should be and were each others' husband and wife.

At the trial, before ALBRIGHT, P. J., it appeared that Molton Nonnemacher died intestate, Nov. 6, 1891, in the Pennsylvania Hospital for the Insane, at Philadelphia, to which he had been removed Oct. 28th, nine days previous to his death. The plaintiffs are his brothers, sister and father. Pauline Nonnemacher, or Weibert, one of the defendants, claimed to be his widow, and alleged that she was lawfully married to him on Oct. 25, 1891, twelve days before his death, and she further alleged that Franklin Molton Nonnemacher, whose guardian, Christian Volle, is one of the defendants, was a son of the deceased, and legitimated by such marriage. James Albright, the other defendant, was made a party to the proceedings, because letters of administration were issued to him by the register pending this contest.

Witnesses were called by plaintiffs who testified that they knew Nonnemacher well and had opportunities of observing him daily, that there was a change noticed in his appearance, habits and conversation in the latter part of 1891 ; he would take things from a store without paying for them ; in October when the weather was cold he would walk on the street without shoes, stockings or coat.  The witnesses were then asked : " Q. From what you saw of Nonnemacher in the last months of his life, do you think he was of sound or unsound mind in October, 1891 ? " Objected to because the facts testified to were not sufficient foundation for an opinion. Objection sustained and exception. [12–14]

The court charged in part as follows :

" [The question in the case before us is, as I have said : Did Molton Nonnemacher have sufficient mental capacity to enter into this kind of a contract and to understand the nature and obligation of it? The question for your consideration is, whether at the very time when he contracted the marriage, that is, when Rev. Gardner joined them in marriage on the 25th of October, 1891, at about five o'clock in the afternoon, Molton Nonnemacher then had sufficient mental capacity to enter into a marriage contract and to understand the nature and obligations of it.] [6] . . . .

" [The allegation on the part of the plaintiffs is, that for

some time before this marriage, on October 25th, Molton Non-nemacher's mind began to fail and that he grew constantly worse, mentally, until he died, some ten or eleven days after the marriage. On the other hand it is asserted that he was not of unsound mind, and that he had abundant mental capacity to contract a marriage. The inquiry is, as I have already said to you, as to his condition at the time he was joined in marriage to this woman. But evidence of his condition both before and afterwards may be received and considered by the jury as bearing upon the question of his mental condition at the time of the marriage.] [7]

" [Not every person can contract a valid marriage. If a person, who was born an idiot, or who, having once been of sound mind, by reason of insanity, or unsoundness of mind, could not comprehend the nature of a marriage contract, were to attempt to contract a marriage and were to go through the ceremony before a minister of marrying a woman, the law would hold such a marriage to be void, because he was not of sufficient capacity to contract. But it is not every mental weakness or eccentricity on the part of one of the contracting parties that will render a marriage void. It might be the case that a man or woman contracted a marriage and it might afterwards be found that the individual was not one of the best balanced men or women, not one of the strongest minded, and perhaps as to some difficult affairs or contracts would not be of sufficient mental ability to act or contract, and yet the individual might have sufficient capacity to contract a marriage, always provided the jury trying the question are satisfied that he or she understood the nature of the obligation he or she was assuming or entering into.] [8]

" [You will also bear in mind, gentlemen of the jury, that as to this issue, the question is, whether, on October 25, 1891, Molton Nonnemacher was of sound mind, and whether he had then sufficient mental capacity to enter into a contract of marriage and to understand the nature and obligations of the same. Had he then sufficient mind to understand what a marriage meant; how his condition, his rights and duties and obligations would be changed by entering into a marriage; how he would be situated in regard to the woman; how she would be situated in regard to him; his rights and obligations as to any children

that might result of the marriage ; his rights and obligations as to the property of himself or of the wife, and the other incidents flowing from a marriage ? Had he sufficient mental capacity to comprehend this and to understand it ? If he had, then you will find this issue in favor of the defendants. If he had not, then the verdict on this point will be in favor of the plaintiffs.] " [9]

Defendant's points were among others as follows :

" 6. Every person is presumed to be sane, until the contrary is shown. The burden in this case is on the plaintiffs to satisfy you by the weight of proof that on October 25, 1891, Molton Nonnemacher was of unsound mind. · If the proofs in the case on this question are equal in weight and reliability, then the presumption of sanity must prevail." Affirmed. [1]

" 7. Mere weakness of mind and peculiarities of conduct will not invalidate a marriage. The evidence must show that there was such an imbecility or unsoundness of mind at the time that the party did not and could not have an intelligent understanding of the contract and relation of marriage." Affirmed. [2]

" 3. Weakness of memory, peculiarities, mental delusions, short of insanity, or want of capacity to manage a business will not avoid a marriage, if the party had sufficient capacity and intelligence to understand the nature of the contract and relation into which he was entering." Affirmed. [3]

" 12. The real point in issue is whether at the precise time of the marriage the party had sufficient intelligence to understand the nature of the contract and relation into which he was entering. The condition of his mind before and after that time is only important and must only be considered as it tends to show the condition of his mind at the time of the marriage." Affirmed. [4]

" 13. If Molton Nonnemacher at the time of the marriage on October 25th had an intelligent understanding of the nature of the act in which he was engaged and the contract and relation into which he was entering, then the marriage is valid, even though he was not capable of making business contracts and carrying on business generally." Affirmed. [5]

Verdict for defendants on first and second questions, and judgment.

*Errors assigned* were (1–9) instructions ; (10, 11) the charge

was unfair and inadequate; (12–15) rulings; quoting instructions, and questions and rulings, but not preliminary evidence.

*A. G. Dewalt* and *John. Rupp, James B. Deshler* with them, for appellants, cited: 1 Bl. Com. 432; Hantz v. Sealy, 6 Bin. 405; Richard v. Brehm, 73 Pa. 140; Parker's Ap., 44 Pa. 309; Walter's Ap., 70 Pa. 392; Middleborough v. Rochester, 12 Mass. 363; Wightman v. Wightman, 4 John. Ch. 343; Crump v. Morgan, 3 Ired. Eq. 91; s. c., 40 Am. Dic. 447; Foster v. Means, 1 Speer's Eq. 569; s. c., 42 Am. Dec. 332; Gathings v. Williams, 5 Ired. L. 487; s. c., 44 Am. Dec. 49; Harrison v. State, 22 Md. 468; Jenkins v. Jenkins, 2 Dana, 103; Rawdon v. Rawdon, 28 Ala. 565; Waymire v. Jetmore, 22 Ohio, 271; Christy v. Clarke, 45 Barb. 529; Foster v. Means, 1 Speer's Eq. 569; Crump v. Morgan, 3 Ired. Eq. 91; Portsmouth v. Portsmouth, 1 Hag. Ecc. (Eng.) 355; McElroy's Case, 6 W. & S. 451; Com. v. Schneider, 59 Pa. 328; Attorney General v. Parnther, 3 Bro. C. C. 441; Hall v. Warren, 9 Ves. 605; White v. Wilson, 13 Ves. 87; Menkins v. Lightner, 18 Ill. 282; Taylor v. Creswell, 45 Md. 422; Bank v. Wirebach, 106 Pa. 37; Harden v. Hays, 9 Pa. 151; Rogers v. Walker, 6 Pa. 371; Grabill v. Barr, 5 Pa. 441; Gangwere's Est., 14 Pa. 417; Titlow v. Titlow, 54 Pa. 216; Pa. Canal Co. v. Harris, 101 Pa. 80; Garrett v. Gonter, 42 Pa. 143; Rolf v. Rapp, 3 W. & S. 21; Ins. Co. v. Rosenberger, 3 W. N. 16; Reichenbach v. Ruddach, 127 Pa. 564; Burke v. Maxwell, 81 Pa. 143; Dickinson v. Dickinson, 61 Pa. 401; Bricker v. Lightner, 40 Pa. 199; Shaver v. McCarthy, 110 Pa. 339; Newhard v. Yundt, 132 Pa. 324.

*R. E. Wright, Harry G. Stiles* and *J. Marshall Wright* with him, for appellee, cited: Wilson v. Mitchell, 101 Pa. 495; Shaver v. McCarthy, 110 Pa. 339; Eddey's Ap., 109 Pa. 406; Wood's Est., 13 Phila. 236; Hopple's Est., 7 W. N. 523; Com. v. Schneider, 59 Pa. 328; R. R. v. Getz, 113 Pa. 220; Fox v. Fox, 96 Pa. 60; Sayer v. Schroeder, 2 Penny. 79; Reeves v. R. R., 30 Pa. 454; Mitchell v. Mitchell, 18 W. N. 439; Reese v. Reese, 90 Pa. 89; Grabill v. Barr, 5 Pa. 441; Boyd v. Eby, 8 Watts, 66; Harden v. Hays, 9 Pa. 162; First Nat. Bank of Easton v. Wirebach's Exr., 106 Pa. 46.

PER CURIAM, February 12, 1894:

The substance of the contention between the parties in this

case was whether Molton Nonnemacher was of unsound mind when the marriage ceremony was performed between him and the defendant on Oct. 25, 1891. The learned court below carefully explained to the jury the question in dispute, and instructed them that if, at the time the marriage was contracted, he was of unsound mind, so that he did not understand the nature and obligation of the contract, they should find for the plaintiffs, and if they should find that at the time of the marriage he was of sound mind, and did understand the nature and obligation of the contract, they should find for the defendant. The learned court was certainly right in directing the inquiry as to the very time of the marriage, as the validity of the contract depended upon the mental condition of the party at that very time. The court fairly and fully explained that evidence was competent as to his condition both before and after the marriage, and that such testimony should be considered by the jury in determining his condition at the time of the marriage. A very large amount of testimony was admitted on both sides of the question and it was all referred to the jury. We do not think that the charge is obnoxious to the criticism that it was unfair to the plaintiffs, or presented the testimony for the defendant more fully than that of the plaintiffs. On the contrary the charge seems to us particularly free from all partiality or bias. The question was one of pure fact, and the jury after considering it returned a verdict in favor of the defendant. There was ample testimony to justify the verdict, and considering all the circumstances of the case it is difficult to believe there ever could be any other.

We think the answers to the defendant's points were entirely correct, and also the rulings upon offers of testimony.

As to the burden of proof it was clearly upon the plaintiffs. There was no proof of such a confirmed condition of lunacy or idiocy as to change the burden of proofs from the plaintiffs to the defendant. Upon the whole case we see no error in the record. The jury having found in favor of the defendant upon the main question, the answers by the jury to the third and fourth questions submitted to them by the court became entirely immaterial, and there was no occasion to take a verdict as to them.

Judgment affirmed.