## Bonker v. Bonker

*Hosbach and Good,* for libellant.

LAUB, J., April 3, 1947.—In this divorce action on the grounds of cruel and barbarous treatment and indignities to the person, the master has recommended the entry of a decree. If it were not for certain elements appearing in the testimony we would be constrained to accept his recommendation since all of the requirements for divorce on these grounds have been proved.

The testimony discloses, however, that at the time he committed some of the acts complained of, respondent was suffering from a disability which the witnesses

termed "paranoia." The symptoms of this disease as manifested in respondent are described by his own sister in this fashion: ". . . when he comes home and is with his people then he seems to let go of himself and his condition is to this extent that he has a complex that he is being persecuted by everybody and that everyone is attempting to do him injury even to the extent of taking his life. He won't eat any food that he would buy in a restaurant but will only eat such food that he prepares himself at home. . . . he seems to see physical attempts to take his life, and do him injury and then he just becomes violent. As an illustration, he lives with my sister and mother and father, and at this particular time he had gone to the bedroom to get into bed and he sneezed and then he jumped out of bed, broke the lamp and threw his pillows against the door. He insisted that my sister had sprayed his bed with something, and nothing we could say would convince him of anything else."

Again, in her testimony, she related: ". . . . a man came in who was subject to epileptic fits, and this man was taken with one of those fits while he was there in the station and fell on the floor. My brother (the respondent) insisted that someone had sprayed the table to get him and that it had affected this other man instead, which of course, wasn't the case at all."

Libellant herself testified that upon consulting the doctors in the hospital where at one time respondent was a patient, "They (the doctors) said that he was apt to become violent and that it wasn't safe for me to live with him because of what he might do and they also told me he was suffering from a paranoia and that if he didn't snap out of it and at his age there was an unlikelihood of changing and that he might be all right for a day or days but that he would become violent and there was no telling what he would do. The nature of that disease was that he might make a victim of

the one closest to him and, of course, being his wife, that would have been me."

The foregoing excerpts from the testimony are ample foundation for a strong suspicion that respondent is mad. Bouvier's Law Dictionary defines "Paranoia" as "A form of insanity which comes under the class of degenerative diseases." However, Gray, in his Attorney's Textbook of Medicine, 2d ed. chap. 16, cautions the legal mind not to accept the term as indicative of a particular medical entity since the diagnostician may have used it for want of a better designation. It is clear, therefore, that the record is at present insufficient to justify a divorce decree and that the questions of respondent's mental capacity is of paramount importance.

The problem is multiformed. For speculative purposes, assuming respondent's insanity (although from a legal standpoint the converse is true and sanity must be presumed: Nonnemacher et al. v. Nonnemacher et al., 159 Pa. 634), he is not properly represented upon the record. His acts of cruelty and those constituting indignities, if performed while in the throes of his mania, are not grounds for divorce since in cases where respondent is insane the cause must have arisen prior to the incidence of the disease: Hickey v. Hickey, 138 Pa. Superior Ct. 271. If his lunacy is temporary only, libellant may not prevail: Thies v. Thies, 57 D. & C. 468. If it is hopeless, that fact must be proved beyond a reasonable doubt and by expert testimony, or by proof of confinement in a mental hospital for ten or more years: The Divorce Law of May 2, 1929, P. L. 1237, sec. 53, 23 PS §53. Moreover, the service in this case would be bad since the Rules of Civil Procedure relating to service on incompetents have not been observed. See Procedural Rule 2051 et seq. Although respondent's incompetency appears only incidently to libellant's proof and there is no specific

allegation anywhere asserting it as a fact, we believe that there is evidence which, in the language of Benz v. Heckman et al., 332 Pa. 187, 190, is "at least sufficient to invite some form of judicial investigation."

The satisfactory resolution of the legal points suggested above is necessary to our ultimate decision. This impels us to refer the case back to the master for complete inquiry into the mental condition of respondent and for the master's recommendations as to future proceedings.

And now, to wit, April 3, 1947, the within matter is referred back to the master with instructions to proceed in accordance with the views herein expressed.