## Ryce v. Ryce (No. 2)

*Samuel Kagle,* for plaintiff.

*Samuel C. Nissenbaum* and *M. E. Maurer,* for defendant.

ALESSANDRONI, P. J., March 13, 1958.—This matter is before us on defendant's exceptions to the report of the master recommending that a decree in annulment be granted, or, in the alternative, that the court grant a decree in divorce a. v. m. on the ground of impotency.

Before discussing the merits, we must consider the chronology of this case since it has an important relationship to the jurisdictional issues raised by defendant.

Plaintiff's complaint in divorce a. v. m. was filed on March 25, 1954; the ground alleged was desertion. The matter was referred to a master. Four days after the reference, a petition and rule to amend the complaint to add the grounds of impotency and indignities was filed; the rule was made absolute and the amendments allowed.

Four hearings were held. On July 12, 1955, the master filed a report in which he recommended that the court grant a decree. Defendant filed exceptions. The court filed an opinion on November 14, 1955, which sus-

tained the exceptions and ordered dismissal of the complaint, Alessandroni, P. J.: Ryce v. Ryce, 5 D. & C. 2d 232. This opinion indicated the existence of serious doubts as to the validity of the marriage because of defendant's mental condition.

Plaintiff petitioned for reargument; the request was denied.

Whereupon, on November 29, 1955, the court allowed a rule upon defendant to show cause why the complaint should not be amended, or, in the alternative, why plaintiff should not be permitted to file an amended complaint, "all proceedings to stay meanwhile". The proposed amendments would state a new cause of action in annulment. The rule was made absolute and amendment was allowed. Thereafter, on January 18, 1956, the case was again remanded to the master.

Plaintiff's amended complaint averred that defendant was mentally incompetent at the time of the marriage and that the marriage was void. Defendant filed preliminary objections to the amended complaint; the objections were dismissed. After holding additional hearings, on September 6, 1956, the master filed a report which recommended a decree in annulment. On November 7, 1956, the court's opinion sustained the exceptions of defendant to the recommendation and dismissed the complaint, Reimel, J.

Plaintiff appealed to the Superior Court as of October term, 1957, no. 104, from the order dismissing the complaint in annulment. Plaintiff also filed an appeal from the order which discharged plaintiff's rule upon defendant to show cause why dismissal of the complaint in divorce a. v. m. should not be reconsidered.

Thereafter, this court, by Reimel, J., requested counsel to petition the Superior Court for a remand of the record. Serious doubts were raised as to the validity of the entire proceedings by reason of defendant's mental condition and the fact that she was not represented

by a guardian. On March 4, 1957, the Superior Court, per curiam, granted the petition; its order vacated the decrees of this court and remanded the record for "further proceedings, for redetermination of the issues and for the entry of such final decrees as shall appear right and proper".

Upon petition, E. J. Barton, father of defendant, was appointed guardian ad litem; the matter was referred back to the master. Subsequently, the master filed a second supplemental report in which he recommended a decree in annulment, or, in the alternative, a decree in divorce a. v. m.

Defendant has vigorously challenged the jurisdiction of this court. Defendant's position is that, since the court had entered a final order, i.e., dismissal of the complaint, it thereafter lacked authority to allow plaintiff to amend his complaint and state a new cause of action. The challenge to the court's action assumes the question at issue, namely, that the court's jurisdiction terminated, and it therefore was unable to allow the amendment. If it is assumed that its jurisdiction had terminated, then defendant's conclusion follows.

It cannot be conceded that a court lacks authority to alter, amend, vacate or otherwise affect its final judgment if, upon timely presentation of proper considerations, the facts before the court are of sufficient weight to warrant the exercise of its power. A court retains jurisdiction over its judgments until its power terminates in accordance with relevant legal principles. Thus, even years later, a final judgment may be opened, stricken or otherwise affected upon proof sufficient to require the exercise of the authority. As an illustration, lack of jurisdiction ab initio would require a court to vacate its judgment no matter when or how the issue was raised, since neither passage of time nor agreement of the parties could confer jurisdiction where none exists: Schliefer v. Zoning Board of Adjustment,

374 Pa. 277. An after-discovered fraud on the court is another instance of a circumstance which could provide a basis upon which a court might act.

Under ordinary circumstances, a court has control of its own judgments until the term has expired or the record has been removed by an appeal: McFadden v. Hanft, 166 Pa. Superior Ct. 261. During the term, a court may entertain a motion to open, to strike, or some equivalent proceeding as of course. The rule to amend the complaint in this case must be considered the equivalent of a rule to open the judgment of dismissal. Manifestly, the opening of a judgment rests on equitable principles and the exercise of a sound discretion. Courts are most circumspect in the use of this power. The record of this case provides clear and substantial grounds for the action of this court in permitting plaintiff to reopen the matter by amendment of the complaint. The record, particularly the evidence presented by defendant, is the basis for the amendment and in the interest of doing substantial justice, the amendment was allowed. The court was well within the scope of its authority when it allowed plaintiff to amend.

Defendant also objects to reconsideration of the dismissal of the divorce complaint on the ground that the appeal period had expired. The rule to amend previously mentioned provided a stay of proceedings; this stay tolled the statute: Chester School District, to use, v. Richardson & Luce, Inc., et al., 320 Pa. 438. The allowance of leave to amend reduced the original order of dismissal from the status of a final judgment to that of an interlocutory order; an order from which no appeal would lie.

Since plaintiff could not have appealed the order entered November 14, 1955, it follows that the only order from which an appeal would lie was that of November 7, 1956. Plaintiff's appeals from that order

were in season. The order of the Superior Court dated March 4, 1957, which remanded the record, vacated all decrees and ordered redetermination, was and is a mandate to redetermine the matter de novo. The mandate is not limited to either the divorce complaint or the annulment and must be construed as encompassing both causes of action. Pursuant to the order, the case must be determined on the basis of the entire record.

Proceeding now to the merits, the record discloses the following:

Plaintiff is an officer in the United States Navy. For some time prior to April 1952 he had proposed marriage to defendant but without success. While visiting her parents' home on Easter Sunday 1952, defendant suddenly stated to plaintiff, "let's get married". They obtained the consent of defendant's parents and departed for Bel Air, Md., by auto. On the journey from Philadelphia, defendant became carsick and the parties stopped at a service station. Defendant went to the rest room. After about 20 minutes, during which time defendant had not reappeared, plaintiff and the attendant opened the door of the rest room and found defendant in her slip; she had removed her dress. She was speaking about heaven and "a passionate discharge". She kept repeating, "you do love me" on the remainder of the trip to Bel Air. This apparently was not stated as a question. A fair inference would be that defendant was seeking to reassure herself about plaintiff's feeling toward her.

After much vacillation, signs of tenseness and statements by defendant that she had a dropped ovary, and reassurances by plaintiff, they were married. Immediately thereafter, the parties telephoned defendant's parents; defendant became hysterical, she told her father that she was losing her "brain power". On the trip back to Philadelphia, she called plaintiff all kinds of

names, she said she was being hypnotized by him. Plaintiff characterized her conduct as "ranting and raving". Defendant refused to have sexual relations then and has refused ever since; the marriage was never consummated by sexual intercourse. The record reveals that defendant's refusal to have sexual relations is inextricably intertwined with her mental condition.

Mentally, defendant's condition continued to deteriorate and in August 1952 it was determined that she required hospitalization. She was admitted to the Philadelphia Psychiatric Hospital. Her condition was diagnosed as schizophrenic reaction, mixed type. During the hospitalization she received a total of 78 shock treatments, including both insulin and electric shock. At the time of her discharge on November 1, 1952, her condition was unimproved with a guarded prognosis. Defendant was readmitted to the same hospital on November 12, 1952; upon this admission, the diagnosis was schizophrenic reaction, catatonic type. She remained at the hospital until January 14, 1953. She was discharged as improved with a guarded prognosis.

The medical records were introduced by defendant in her defense to the divorce action. Upon cross-examination plaintiff conceded that he had married an insane woman. Defendant's father also testified that in his opinion, based on observation, defendant was insane then and at the time of her marriage. Defendant's own actions at the hearings indicated the existence of an abnormal mental condition. It is of interest that previously, plaintiff raised strenuous objections to the admission of hospital records from which the foregoing summary has been made.

In defendant's exception to the conclusion that defendant lacked capacity, defendant has specifically objected to the use of hospital records and the expert opinion based on a hypothetical question. Defendant's argument is that the records were introduced in the

divorce action by defendant, and cannot be utilized by plaintiff to establish lack of capacity in the annulment proceeding. Defendant would have the evidence compartmentalized and limit the use of the hospital record solely to the divorce complaint.

Defendant's position lacks substance because plaintiff was capable of producing the records from the hospital on his own behalf. The records met the probative requirements set forth in Freedman v. The Mutual Life Insurance Company of New York, 342 Pa. 404, and are admissible. Defendant does not suggest that plaintiff's statement of defendants' history in the records was made with a view toward possible litigation and, therefore, possibly falsified. It is clear that the history by plaintiff was given to assist the physicians' determination as to defendant's condition and treatment. In the case cited above, it is stated that, if otherwise admissible, hospital records are competent to show hospitalization, treatment and the statements of symptoms given by the patient.

Manifestly, defendant was unable to state a history in her deranged mental state. There existed at that time no motive for falsification which could be now attributed to plaintiff. He did not file a divorce complaint until some 20 months later.

Defendant objected to the use of the hospital records and a review of the record in the testimony by an expert witness as the basis for a hypothetical question to the doctor produced by plaintiff, a specialist in psychiatry. The doctor testified, on the basis of a hypothetical question, that defendant was incapable of entering a valid marriage because of her mental condition at that time. His opinion was admissible and its weight was for the fact finder: Kelly v. Martino, 375 Pa. 244. The expert rendering the opinion does not warrant the accuracy of the facts. He assumes that they are true for the purpose of his opinion.

Defendant's condition after marriage is relevant when the inquiry is directed to her mental status at the time of marriage: Nonnemacher v. Nonnemacher, 159 Pa. 634.

Our redetermination of the issues based on the entire record leads inescapably to the conclusion that defendant did not have capacity to enter a valid marriage, and it is, therefore, void. See Faivre v. Faivre, 182 Pa. Superior Ct. 365, for a discussion wherein it was held that the divorce law does not bar an annulment based on insanity at the time of marriage.

In view of our conclusion, it is necessary to sustain defendant's exception to the master's finding of fact (b), conclusion of law no. 6, and recommendation that in the alternative a divorce decree should be granted. The action is obvious, since a void marriage cannot be the basis for a divorce decree. The complaint in divorce a. v. m. must be dismissed.

### Order

And now, to wit, March 13, 1958, defendant's exceptions nos. 4, 9 and 10 are sustained. The remainder of the exceptions are dismissed.

Plaintiff's complaint in divorce a. v. m. is dismissed. Let decree in annulment issue.